[No. 26588-1-I.   Division One.   April 13, 1992.]

*In the Matter of the Marriage of* A. GRAHAM GREENLEE, *Appellant, and* JULIA H. GREENLEE, *Respondent.*

---

704

*Gerald L. Bopp* and *Gerald L. Bopp Law Office,* for appellant.

*Lawrence R. Besk* and *Cotter, Wechsler, Hall, Besk & Erickson,* for respondent.

KENNEDY, J. — A. Graham Greenlee appeals the Superior Court's denial of his motion for revision of a commissioner's order authorizing his former wife, Julia Greenlee, to refinance her house in order to pay appellant's debt to the IRS from the proceeds of his lien on the house. Mr. Greenlee also appeals the award of attorney fees. Finding that the issue of the refinancing order is now moot, and that attorney fees were properly awarded, we affirm.

## FACTS

The marriage of Julia Greenlee (respondent) and A. Graham Greenlee (appellant) was dissolved by decree dated May 27, 1982. That decree incorporated the property settlement agreement made between the parties. This agreement contained several provisions relevant to this appeal. Paragraph VIII stated that:

> husband hereby covenants and agrees that if any claim, actions or proceedings shall hereinafter be brought seeking to hold wife liable on the account of any debt, liability, act or omission of husband, he will, at his sole expense, defend wife against any such claim or demand, whether or not well founded, and that he will hold her harmless therefrom.

Paragraph X states:

> Therefore, in addition to any other remedy available to the husband or wife under this agreement o[r] at law, either the husband or the wife shall have the remedies of specific performance and injunction in any court of competent jurisdiction to prevent violation of the terms hereof.

Paragraph XV, B and C state:

> B. Each party agrees to pay, hold the other party harmless from any payment thereon and indemnify the other party should he or she be required to pay on any obligations incurred by the parties respectively since the date of separation, which the parties agree was November 29, 1980.
> C. Each party agrees to pay, hold the other party harmless from any payment thereon, and indemnify the other party should he or she be required to pay on any obligations secured by assets awarded to them respectively.

In addition to these "hold harmless" clauses, the agreement specifically provided that:

> Each party shall pay any and all federal income tax due as a result of their respective incomes since January 1, 1980, and defend, hold harmless and indemnify the other from any payment thereon.

The parties' decree of dissolution also provided that the parties would cooperate with each other to the fullest extent in insuring compliance with the provisions of the agreement.

The property division left Ms. Greenlee with possession of the family home, but Mr. Greenlee was given a lien on that home in the amount of $50,000 which was to accrue 8 percent simple interest until paid. The lien was to be payable upon termination of the husband's child support obligations, the wife's remarriage, or sale of the residence. The obligation of child support was to stop at such time as the children reached 18 or ceased progressing full time toward a post-high school education.[1]

In November 1989, Ms. Greenlee was contacted by the IRS, seeking collection of unpaid taxes owed by Mr. Greenlee. A notice of levy and federal tax lien on Mr. Greenlee's interest in her home was served on Ms. Greenlee on November 30, 1989. Shortly thereafter, Ms. Greenlee sought to refinance the home to pay off this debt, but Mr. Greenlee refused to sign the documents allowing the refinancing. In order to refinance, the bank offering the loan required that it be placed in first position on the loan with no superior liens. Appellant refused to allow the proceeds of his current lien to be disbursed to pay off the IRS lien. The bank declined to refinance under those circumstances since the IRS lien would have priority over the bank's lien. Mr. Greenlee also informed the respondent's attorney that if respondent did attempt to pay the IRS with the moneys from his lien on the house, she would do so as a volunteer and that this would not discharge her obligation to Mr. Greenlee.

Respondent then filed a motion to show cause why Mr. Greenlee should not be required to execute all of the necessary documents to allow her to refinance the home. The court commissioner entered an order on the motion to show cause on April 13, 1990. The order granted the refinancing relief, $3,000 in attorney fees, and $2,670 for the increased costs of financing due to appellant's delay. Appellant then filed a motion for revision, which was denied on June 29, 1990. In its order denying revision, the court ordered an

---

[1]Although the appellant claims that his child support obligation terminated in January 1988, he cites to no evidence in the record that the children's post-secondary education had ended by that time.

additional award of attorney fees of $1,000. The home was subsequently refinanced. Mr. Greenlee's lien proceeds were paid into the registry of the court and sufficient funds were disbursed to retire the IRS lien. The balance of the proceeds was then disbursed to Mr. Greenlee. This appeal followed.

DISCUSSION

I. <u>Relief Below.</u>

Appellant's main challenge on appeal is that there was no proper legal basis for the court ordered refinancing and disbursement of the lien proceeds. At oral argument for this appeal, however, both parties conceded that this issue is now moot. We therefore address this issue only to the extent necessary to determine the propriety of the trial court's award of attorney fees to Ms. Greenlee.

II. <u>Attorney Fees.</u>

■ Attorney fees are generally not awarded in a civil action unless authorized by statute, by agreement of the parties, or upon a recognized equitable ground. *Woodcraft Constr., Inc. v. Hamilton*, 56 Wn. App. 885, 887, 786 P.2d 307 (1990). Respondent admits that there is no contractual provision for an award of attorney fees in this case but contends that the fees are justified by statute and recognized equitable grounds.

Respondent cites RCW 26.09.140 as statutory support for the award of attorney fees. RCW 26.09.140 provides that

> [t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this [marital dissolution] chapter . . ..

An award of attorney fees under this section "rests with the sound discretion of the trial court, which must balance the needs of the spouse requesting them with the ability of the other spouse to pay." *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984).

Although the respondent claims that she "offered" to provide a detailed financial affidavit to prove her need, there is

no record of her need or of her financial resources at all.[2] The burden of proving need rests on the spouse asserting the request (*see In re Marriage of Young*, 18 Wn. App. 462, 466, 569 P.2d 70 (1977)), and the respondent did not meet that burden. In such a case, the trial court could not determine that she had a need. Therefore, attorney fees cannot be justified on this ground.

■ However, the respondent has demonstrated that the court's award of attorney fees was justified on a recognized equitable ground based on the appellant's intransigence which forced the respondent to go to court to obtain the relief granted below.

A trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney fees on that basis. *Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969). "When intransigence is established, the financial resources of the spouse seeking the award are irrelevant." *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989).

Awards of attorney fees based upon the intransigence of one party have been granted when the party engaged in "foot-dragging" and "obstruction", as in *Eide*, 1 Wn. App. at 445; when a party filed repeated motions which were unnecessary, as in *Chapman v. Perera*, 41 Wn. App. 444, 455-56, 704 P.2d 1224, *review denied*, 104 Wn.2d 1020 (1985); or simply when one party made the trial unduly difficult and increased legal costs by his or her actions, as in *In re Marriage of Morrow, supra* at 591.

Although there was no specific finding of intransigence, the trial court did state that the award of attorney fees was justified by the fact that the respondent was forced to come to the court to enforce her decree. This language causes us to conclude that the court was relying on the appellant's intransigence in justifying the award of fees. There is over-

---

[2]On October 7, 1991, this court received a financial affidavit from respondent. However, it was designated for use in determining fees on appeal, and in any event it cannot justify an award of fees by the trial court, pursuant to RCW 26.09.140, since there is no evidence in the record of the appellant's ability to pay.

whelming evidence supporting such a characterization of the appellant's behavior.

The respondent repeatedly tried to get the appellant to allow her to refinance her home without resort to an attorney and to the court. Not only did Mr. Greenlee deny her aid but also, in a classic example of obstructionist and foot-dragging tactics, Mr. Greenlee threatened her with increased financial responsibility if she did pay the IRS, offering her no other reasonable alternative except to go to court. Moreover, Mr. Greenlee did this in light of Ms. Greenlee's clear right to be held harmless from Mr. Greenlee's obligations to the IRS and her clear right to retire Mr. Greenlee's lien against her residence.[3]

Appellant has claimed that respondent had no clear right to go to court to force him to allow the refinancing because the IRS lien on the house did not or could not create any loss from which Mr. Greenlee would have been required to indemnify or hold the respondent harmless. Specifically, the appellant argues that there was no threatened loss to respondent because the IRS could not execute against the entire house since Washington case law holds that *all* property liens are personal property[4] and therefore only subject to a forced sale of the lien itself. This is a misunderstanding of the applicable law and the dissolution agreement between the parties.

■ An indemnity or hold harmless clause will be construed so as to give effect to the intent of the parties. *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 527 P.2d 1115 (1974). In paragraph VIII of the property settlement agreement Mr. Greenlee agreed to hold respondent harmless and to defend her from claims including those which are not well founded. Therefore, it is immaterial whether the IRS could actually legally execute on the real property, forcing it to be sold in order to execute upon Mr. Greenlee's lien proceeds. The

---

[3]Indeed, if Mr. Greenlee's assertion that his lien was by then overdue is correct, Ms. Greenlee had the obligation to retire his lien.

[4]Appellant claims this proposition of law was stated in *Mueller v. Rupp*, 52 Wn. App. 445, 761 P.2d 62 (1988).

record reflects that regardless of the IRS's legal rights in the matter, Ms. Greenlee was being told by the IRS that her home would be subject to a forced sale unless Mr. Greenlee's tax debts were paid. According to the agreement between the parties, Mr. Greenlee was to hold Ms. Greenlee harmless with respect to this claim, regardless of whether the claim was well founded, and Ms. Greenlee was not required to litigate with the IRS over this issue.

By the terms of the dissolution agreement, any part of the agreement, including the hold harmless clause, can be enforced by "specific performance and injunction in any court of competent jurisdiction". Even if such a clause were not present, Washington courts have the power to enforce executory provisions of a decree of dissolution provided that in so doing they do not modify the decree. *Goodsell v. Goodsell*, 38 Wn.2d 135, 138, 228 P.2d 155 (1951).

The respondent had a clear legal right to be held harmless with respect to the IRS's claim against her former husband, and therefore could require appellant to execute the necessary documents to enable her to refinance the home and pay the IRS lien. This right was enforceable in court. If Mr. Greenlee wanted to fight with the IRS over how much he owed, he had remedies, such as paying the bill and then litigating the dispute, which could have been exercised without putting Ms. Greenlee in the middle, in violation of the couple's dissolution agreement. Appellant's actions in refusing to cooperate with respondent to hold her harmless from the IRS's claims in the face of his contractual duty to do so clearly demonstrates intransigence. Therefore, the trial court's award of fees was justified.

Respondent also requests attorney fees on appeal arguing that the appeal is frivolous. "An appeal is frivolous if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists." (Citations omitted.) *Chapman v. Perera*, 41 Wn. App. at 455-56.

Appellant's appeal presents no debatable issues. Appellant appealed the refinancing relief granted as well as the

award of attorney fees. He concedes that the refinancing relief became moot before the appeal was perfected. It is beyond debate that the respondent had a right to be free from any potential loss caused by the appellant's tax debt and that she had no obligation to litigate with the IRS, even if the IRS's threats to execute upon the real property in order to reach Mr. Greenlee's lien proceeds were not legally well founded. The trial court could properly allow the refinancing of the house to avoid such a potential loss. The award of attorney fees was clearly justified based upon the appellant's intransigence in trying to prevent the respondent from refinancing the house. Therefore, the appeal of these issues is frivolous and the respondent's reasonable attorney fees are awarded on appeal, without regard to her need or the appellant's ability to pay.

COLEMAN and PEKELIS, JJ., concur.

Reconsideration denied May 19, 1992.

Review denied at 120 Wn.2d 1002 (1992).