FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 JUN -5 AM 9: 46



## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Marriage of )
LUCY STOKSTAD (now known as Lucy )
Spier or Lucy Zellweger), )
)
           Respondent, )
)
    and )
)
D. BRUCE STOKSTAD, )
)
           Appellant. )

No. 75438-6-I

UNPUBLISHED OPINION

FILED: June 5, 2017

SCHINDLER, J. — Lucy Stokstad filed a motion to determine the amount of the outstanding judgment liens so that she could sell her property and satisfy the amount owed. D. Bruce Stokstad objected, arguing the court should also resolve other outstanding matters. D. Bruce Stokstad appeals the denial of a motion for a continuance, calculation of the amount of the liens, and the award of attorney fees to Lucy Stokstad. Finding no abuse of discretion or reversible error, we affirm.

## FACTS

D. Bruce Stokstad and Lucy Stokstad are the parents of W.S. The trial court entered the initial child support order in 1998. During the ensuing and lengthy litigation, the trial court entered several judgments against Lucy[1] for unpaid obligations, including

---

[1] We refer to D. Bruce Stokstad and Lucy Stokstad by their first names for purposes of clarity.

back child support, medical support, and attorney fees. In 2009, W.S. began living full time with Bruce. On July 15 and August 19, 2011, the court entered judgments and orders addressing child support and postsecondary educational support.

W.S. turned 18 years old in January 2011. In January 2012, the Social Security Administration (SSA) made a lump sum payment of $16,225.00 from Lucy's disability benefits directly to W.S. In February 2012, the Washington State Department of Social and Health Services Division of Child Support (DCS) garnished $16,412.50 from Lucy's Social Security disability benefits and deposited the money into Bruce's bank account.

On February 6, 2012, DCS issued a "Notice of Credit" to Bruce indicating that the full amount of the Social Security payment to W.S. had been credited "to reduce the noncustodial parent's past-due support debt." But the initial calculations of DCS credited Lucy a total of only $649.

DCS notified Bruce in January 2015 that it was crediting Lucy with the full amount of $16,225 for the payment to W.S.[2] Bruce submitted an objection, claiming DCS applied the credit incorrectly.

On February 17, 2015, the DCS Conference Board (Conference Board)[3] rejected Bruce's objection and affirmed the credit under Washington statutes, the Washington Administrative Code (WAC), and DCS policy. The Conference Board chair found no exceptional circumstances justified reducing the credit and noted that if Bruce wished "to pursue the issue further, he'll need to do so in court." DCS determined the disability

---

[2] See RCW 26.18.190(2) (requiring Social Security disability benefits paid to child on parent's behalf be credited to support obligation); see also WAC 388-14A-4200(2).

[3] A conference board is an "informal review of case actions and of the circumstances of the parties and children related to a child support case." WAC 388-14A-6400(1). A conference board is "not a formal hearing under the Administrative Procedure Act, chapter 34.05 RCW," and "does not replace any formal hearing right created by chapters 388-14A WAC, or by chapters 26.23, 74.20 or 74.20A RCW." WAC 388-14A-6400(4), (5).

benefits would be applied to Lucy's support obligations for the period of June 2009 to June 2011.

In a separate proceeding, Bruce and Lucy participated in an administrative hearing to determine Lucy's current obligation for postsecondary support. On June 30, 2015, the administrative law judge (ALJ) issued the final order. The ALJ noted that Bruce continued to dispute the DCS application of credit for the SSA payment to W.S., but ruled that the ALJ had no authority to decide the issue. Neither party sought judicial review of the decision.

On February 5, 2016, Lucy filed a "Motion Regarding Judgment Liens" to determine the amount owed to satisfy several judgment liens recorded on her residential property. Lucy stated she was in the process of selling her house "in large part to satisfy these judgments and her post-secondary support obligation." In her motion and supporting documents, Lucy identified the relevant judgments, any prior credits or payments, and her calculation of the outstanding amounts due.

On February 12, the attorney for Bruce filed a "Counter Motion to Continue Hearing," asking the court to continue the scheduled February 19 hearing to March 1. Counsel asked the court to decide all outstanding support and enforcement issues at the same time as the residential liens, including anticipated motions for enforcement of Lucy's outstanding obligations for postsecondary support and medical support and for an additional award of attorney fees. Counsel also asked the court to invalidate the DCS credit for the SSA payment to W.S. On February 16, Bruce filed a declaration "in partial response" to Lucy's motion.

In reply, Lucy submitted the declaration of her realtor Gerry Eagle. Eagle stated

3

Lucy had accepted the buyers' cash offer on January 25, 2016. Eagle explained that the buyers agreed to delay the closing from February 12 to March 1 but did not want any further delay. Eagle believed any further delay in resolving the outstanding liens would jeopardize the sale.

On February 19, a family law commissioner denied the motion for a continuance and entered an "Order Regarding Judgment Liens." The order addresses the judgment liens and concludes the total amount owed to satisfy all of the outstanding liens on the property was approximately $206,500.

On February 25, Lucy filed a motion to clarify the February 19 order and for an expedited hearing. Citing the March 1 closing date for sale of the property, Lucy asserted Bruce failed to cooperate in signing the necessary documents to permit the sale to move forward.

On February 26, a commissioner entered an order directing the sale of the property and directing the court clerk to enter the satisfactions of judgment for the liens so that the sale could proceed. The order states that after the sale, Bruce and Lucy would each receive $50,000 from escrow and the remaining proceeds, less costs of the sale, would be transferred to the registry of the court. The order noted that entry of the satisfactions of judgment was "purely for purposes of enabling the sale of the real property" and without prejudice to Bruce "to seek any relief available to him under the law."

On March 30, the commissioner denied Bruce's motion for reconsideration. Bruce filed a motion for revision.

On June 2, 2016, the superior court denied the motion to revise and ordered

disbursement of the funds in the court registry to satisfy the outstanding judgment liens.

The court denied Bruce's motion for reconsideration and for additional findings and awarded Lucy attorney fees.

## ANALYSIS

### Standard of Review

When a party moves for revision of a commissioner's ruling, the superior court reviews the decision de novo, based on the evidence and issues presented to the commissioner. See RCW 26.12.215; RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). On appeal from a superior court order denying revision, we review the superior court decision, not the commissioner decision. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

### Continuance

Bruce contends the superior court erred in finding that the commissioner properly denied his request for a two-week continuance. Bruce argues he needed a continuance to properly prepare a response to Lucy's motion and to permit all outstanding issues to be resolved at the same time. Bruce maintains that as a result of the denial, the commissioner and superior court committed multiple legal errors.

We review the decision to deny a continuance for a manifest abuse of discretion. Harris v. Drake, 116 Wn. App. 261, 287, 65 P.3d 350 (2003). The trial court abuses its discretion only if the decision is manifestly unreasonable or based on untenable grounds. Hizey v. Carpenter, 119 Wn.2d 251, 268, 830 P.2d 646 (1992). The court's decision on a motion to continue necessarily rests on the specific facts of the case, and the court may consider a variety of factors, including diligence, materiality, due process,

and a need for an orderly procedure. In re Dependency of V.R.R., 134 Wn. App. 573, 581, 141 P.3d 85 (2006).

Lucy's motion and request for relief were limited to resolution of the amount owed to satisfy the judgment liens on her property so that the imminent sale of her house could proceed. Bruce was well aware in advance that Lucy planned to sell the property, a transaction that was clearly to his benefit. Bruce's primary legal challenge to Lucy's motion was that DCS erred in crediting the SSA benefits paid to W.S. But Bruce raised that same issue at least one year earlier in conjunction with the Conference Board decision and the administrative hearing. Nothing in the record suggests Bruce needed more time to respond to the specific issues raised in Lucy's motion.

Rather, Bruce sought the continuance primarily to expand the scope of the hearing to encompass all outstanding issues, including a determination of Lucy's other unpaid obligations. A cursory review of the parties' litigation history suggests that Bruce was proposing a significant expansion of the proceeding that would likely result in a lengthy delay. Any further delay in the resolution of Lucy's motion could reasonably have jeopardized the sale of the house.

Under the circumstances, the court's decision to deny the continuance and limit the current proceeding to resolution of Lucy's motion was reasonable and well within its discretion.

Credit for Social Security Disability Benefits

Bruce contends the superior court erred in crediting $16,225 to Lucy's judgment lien obligations for the SSA benefits paid to W.S. in January 2012. Bruce argues the DCS application of the credit violated state and federal law. We disagree.

6

As noted in the 2015 DCS Conference Board decision, RCW 26.18.190(2) mandates that the court offset from a parent's child support obligation any Social Security disability payments to a child on that parent's behalf.

> When the social security administration pays social security disability dependency benefits, retirement benefits, or survivors insurance benefits on behalf of or on account of the child or children of a person with disabilities, a retired person, or a deceased person, the amount of benefits paid for the child or children shall be treated for all purposes as if the person with disabilities, the retired person, or the deceased person paid the benefits toward the satisfaction of that person's child support obligation for that period for which benefits are paid.

RCW 26.18.190(2).[4] DCS regulations mirror the statute:

> When the Social Security administration pays Social Security disability dependency benefits, retirement benefits, or survivors insurance benefits on behalf of or on account of the child or children of an NCP [(noncustodial parent)] who is a disabled person, a retired person, or a deceased person, DCS treats the amount of benefits paid for the child or children as if the NCP paid the benefits toward the NCP's child support obligation for the period for which benefits are paid.

WAC 388-14A-4200(2).

The superior court also relied on In re Parentage of Fairbanks, 142 Wn. App. 950, 176 P.3d 611 (2008), that interpreted RCW 26.18.190(2).

> RCW 26.18.190 addresses the effect of benefits paid by the Social Security Administration on behalf of a child. RCW 26.18.190(2) specifically provides that when Social Security benefit payments are made on behalf of the child of a disabled person, that amount is treated for all purposes as if the disabled person had paid the benefits toward the satisfaction of that person's child support obligation for the period for which the benefits were paid.

Fairbanks, 142 Wn. App. at 956 (father entitled to child support credit for lump sum Social Security disability payment to child for father's disability); see also In re Marriage of Briscoe, 134 Wn.2d 344, 347-48, 949 P.2d 1388 (1998) ("[RCW 26.18.190(2)] is

---

[4] Emphasis added.

unambiguous: Disability benefits paid directly to the children are in partial satisfaction of the disabled parent's support obligation.").

Under unambiguous Washington law, the superior court did not err in offsetting Lucy's support obligation with the SSA payment to W.S.

Bruce asserts that Fairbanks is distinguishable because it does not involve an SSA payment to an adult child or for an amount in arrears. But he points to nothing in the court's analysis to support this claim. Bruce's reliance on out-of-state authority is equally unpersuasive. None of the cases he cites address provisions analogous to Washington statutes and regulations.

Bruce further contends the 2015 DCS application of credit was void and constituted an improper vacation of the 2012 Notice of Credit, application of the credit violated various federal regulations, and the Conference Board procedure violated his due process rights. Bruce also maintains that the doctrines of collateral estoppel, res judicata, and laches preclude application of the credit because Lucy failed to object to the 2012 Notice of Credit.

But Bruce offers only a litany of conclusory and disjointed legal arguments to support these theories. For several issues, Bruce has failed to provide a sufficient record to permit meaningful review. Accordingly, we decline to consider these contentions. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

In a related contention, Bruce claims the superior court erred when it "impliedly" found that he was bound by the Conference Board decision when he failed to seek

review of the subsequent ALJ decision. Because Bruce fails to demonstrate that the superior court erred in applying the credit based on Washington law, we need not address any alternative bases for the court's decision.

2011 Judgment Lien

One of the liens on Lucy's property was for a 2011 judgment under cause number 11-9-22746-0, totaling $155,110.74, including $127,309.63 in attorney fees. The judgment amount included awards for all attorney fees to date, back child support and interest for May 2009 through June 2011, and special expenses and interest for August 2007 through June 2011.

Lucy argued, and the court agreed, that the attorney fee award in the 2011 judgment encompassed two earlier judgments for identical services in the amount of $2,114.75 (2010) and $4,200.00 (2009). Bruce maintains the court erred in finding that the 2011 judgment "superseded" the two earlier judgments.

But Bruce does not dispute that the 2011 judgment included an attorney fee award for the identical services included in the 2009 and 2010 judgments. Bruce makes no showing that he was entitled to be paid twice for the same services. The court did not err in removing the two earlier judgment liens.

Credit for Garnished Funds

Bruce contends the superior court erred in crediting $5,546.23 as a partial satisfaction of the 2011 judgment. Bruce garnished that amount in 2012 for the 2009 attorney fee judgment of $4,200.00 plus interest.

As set forth above, the 2011 judgment included the amount awarded in the 2009 attorney fee judgment. Bruce fails to demonstrate how the court erred in applying the

garnished amount toward satisfying the 2011 judgment.

Attorney Fee Award

Bruce contends the court erred in awarding Lucy $6,658.18 in attorney fees for his bad faith and intransigence during the motion for revision and motion for reconsideration. Bruce argues the court should have awarded him attorney fees based on Lucy's intransigence.

The court "may consider whether additional legal fees were caused by one party's intransigence and award attorney fees on that basis." In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). Intransigence may involve " 'foot-dragging' and 'obstruction,' " the filing of unnecessary or frivolous motions, a refusal to cooperate with the opposing party, and any other conduct that makes the proceeding unduly difficult or costly. Greenlee, 65 Wn. App. at 708 (quoting Eide v. Eide, 1 Wn. App. 440, 445, 462 P.2d 562 (1969)).

The court found, among other things, that during the course of Bruce's motion for revision, counsel refused to cooperate in resolving the relatively limited issues related to the judgment liens; submitted lengthy pleadings and numerous additional documents and materials, some of which made contradictory arguments; raised new issues; and repeatedly attempted to expand the hearing beyond the scope of Lucy's motion. As the court aptly commented, counsel's actions permeated the proceeding—"On a global level, [Bruce's attorney] has transformed a simple Motion to pay off old judgments in which [Bruce] would receive a considerable sum into major litigation." Substantial evidence supports the court's findings. The court did not abuse its discretion in awarding attorney fees for intransigence.

10

Bruce claims the court's calculations erroneously failed to include the appropriate interest for several items and failed to demonstrate that the credit was allocated to unpaid obligations in the proper order. These claims are too conclusory to address. Moreover, the current proceeding addressed only the payments necessary to satisfy the liens so that the sale of the property could proceed. As Lucy has acknowledged, Bruce is free to pursue any other outstanding obligations, including unpaid interest, at a future hearing. Bruce has failed to demonstrate that the court's resolution of the judgment liens was either unlawful or inequitable.

Lucy contends the superior court erred in considering documents that Bruce submitted for the first time in support of the motion for revision and motion for reconsideration. But the court expressly ruled it would consider the documents. And because consideration of the documents does not establish any reversible error, we do not address this issue further.

Both parties have requested attorney fees on appeal for intransigence. Both requests are denied.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Spearman, J._          _Becker, J._

11