# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAVID RYAN BENDER, | No. 81893-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MAIRA JOIE BENDER, | |
| Respondent. | |

SMITH, J. — This appeal arises from Maira Bender's decision to move, with her then ten-year-old child, approximately five miles closer to the residence of the child's father, David Bender. Maira's proposed new address was both in the city where David already lived and in the same school district as his home.[1] Still, David strenuously objected to the move, asserting that it would be detrimental the child's education and would disrupt the residential schedule and David's contact with the child. He also expressed concerns about the child living in the same household as Maira's boyfriend even though he had not previously objected to the boyfriend's significant involvement in the child's life. Also, in response to the proposed move, David proposed drastic changes to the parties' parenting plan.

When the matter came to trial about a year and a half after Maira gave notice of her intent to move, David withdrew his objection to the relocation and

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity.

clarified that he was seeking only minor changes to the existing parenting plan. Based on the evidence presented at trial, the court modified the parenting plan in ways that were largely consistent with David's arguments at trial, but also awarded attorney fees to Maira based on David's intransigence. The court concluded that the position David took and maintained up until trial was obstructive and needlessly caused the litigation to be more expensive, expansive, and acrimonious than necessary. There was a tenable basis for the trial court's decision to award fees to Maira.

We affirm.

FACTS

When Maira and David Bender dissolved their marriage in 2013, the court entered an agreed parenting plan for the parties' then-five-year-old child, B.B. The plan provided for B.B. to live with Maira the majority of the time. The plan also imposed restrictions under RCW 26.09.191(3) on David due to a "long-term impairment resulting from drug, alcohol or other substance abuse that interferes with the performance of parenting functions." RCW 26.09.191(3)(c). Despite such restrictions, the parties also agreed that B.B. would reside with David two nights per week, from Tuesday to Thursday, to align with his work schedule. The plan provided for joint decision-making for major decisions including non-emergency healthcare and education. The RCW 26.09.191 restrictions on David required him to be "clean and sober for 24 hours prior to any visitation." And the parenting plan gave Maira the "right to refuse [David's] visitation" if she "reasonably suspect[ed]" at the time of exchange that he had used alcohol or

drugs and to require him to submit to testing. In the case of a positive test or refusal to test, the plan permitted Maira to request the suspension of David's visitation.[2]

For the first few years, the parties co-parented without significant conflict and varied, to some extent, from the terms of the parenting plan. Eventually, however, the parties' relationship and cooperation deteriorated, especially after Maira demanded that David submit to drug testing in December 2016. After that test was positive for marijuana, Maira began to insist on strict adherence to the terms of parenting plan. The parties' conflict escalated in 2017, and both sides resorted to court motions and litigation in an attempt to resolve their differences.

In April 2018, Maira provided notice to David of her intent to move within Snohomish County, from Bothell to Lynnwood, where David lives.[3] Maira's notice explained that she wanted to move because (1) her current landlord was raising the rent, (2) moving into the home of Christopher Franks, her boyfriend of more than two years, would offer a more "affordable" housing option, and (3) her proposed address was closer to David's home. Maira's notice identified the

---

[2] In his briefing on appeal, David suggests that RCW 26.09.191 restrictions in the 2013 parenting plan were premised on "substance abuse issues specifically related to marijuana." But it is clear from the record, including David's own testimony, that the restrictions were based on substance abuse history related to opioids, the "majority" of which stemmed from his involvement in a serious car accident in 2003.

[3] Because Maira's proposed move would result in B.B.'s transfer to a new school district, the Child Relocation Act, RCW 26.09.405-.560, required Maira to provide formal notice of the intent to change B.B.'s primary residence. See RCW 26.09.440 (form and content of notice); see also RCW 26.09.450 (if relocation is within the same school district, party intending to relocate may provide actual notice).

school that B.B. would attend, and she checked a box to indicate that she was not seeking to alter the parenting plan in conjunction with the proposed move.

David objected. He claimed: (1) the proposed move violated the parenting plan's provision for joint decision-making with respect to education, (2) changing schools would jeopardize academic "special arrangements" in place at B.B.'s current school,[4] and (3) B.B.'s living in the same household as Franks was "totally inappropriate given his criminal record and behavior." David urged the court to deny the request to relocate and award him "full custody and sole decision making to protect" his child from Franks.

Although he had not previously objected to Franks's involvement in caretaking for B.B., David asserted that Franks presented a danger to B.B. because of a criminal history that included driving under the influence (DUI), assault, and domestic violence, and because of the existence of a protection order involving Franks's minor child. David asserted that Franks exposed B.B. to "intense hostility and ongoing efforts to alienate" David. As an example, David reported that Franks had served him with legal papers in B.B.'s presence and that Franks sometimes waited on David's doorstep to pick up B.B., conduct that made him feel "threatened and uncomfortable." To substantiate his allegations, David provided an ex parte temporary restraining order that Franks filed against his former spouse in 2014 and a document indicating that Franks was arrested on a charge of fourth degree assault in 2012.

---

[4] David alleged that academic services were required, in "large part" because Maira did not "support" B.B. with her homework.

4

In response to David's objection, Maira emphasized that her proposed move was closer to, not farther from, David's residence and, therefore, would not impact his residential time or relationship with B.B. Maira conceded that Franks had been charged with DUI and assault but reported that the assault charge was dismissed and the DUI was reduced to reckless driving. She stated: "I am not going to excuse [Franks's] behavior, but those incidents were several years ago, he resolved them, took responsibility, completed the required services and has not had any further issues." Maira also stated that the 2014 temporary restraining order that Franks filed was no longer in effect, and that Franks and his former spouse shared equal custody of their daughter. Maira also said that, other than attending an extra class for help in math, B.B. was not receiving any special educational services at her current school.

In July 2018, David filed a motion for a temporary order to prevent the relocation. He argued that Maira had not provided a "sufficient basis" to relocate and again claimed that relocation would "disrupt the contact and schedule" that was in place. David requested that the court adopt his proposed parenting plan if it allowed relocation. His proposed plan placed restrictions on Maira based on her "abusive use of conflict" and based on Franks's alleged history of "domestic violence" and "assault," in addition to limitations on Maira's decision-making with respect to education. David suggested residential provisions that essentially reversed those that were in place, providing that B.B. would reside primarily with him and spend alternate weekends with Maira, with the caveat that she could not leave B.B. unattended in Franks's care.

5

In July 2018, a superior court commissioner considered David's motion for a temporary order, and after reviewing the statutory factors relevant to relocation under RCW 26.09.520, allowed Maira to relocate with B.B. The court found that "[g]iven the geographic proximity, the father's contact with the child will not be disrupted by the move." The court appointed a guardian ad litem (GAL) to investigate (1) the child's school based on David's objections, (2) whether restrictions on David based on substance abuse history remained appropriate, and (3) whether any other restrictions under RCW 26.09.191 were appropriate as to either party. The court declined to include issues related to Franks's background in the GAL's investigation. Pending the GAL's investigation, the court ordered the parties to enroll B.B. in the school that corresponded to the mother's new residential address. David later enrolled one of his younger children in kindergarten in the same school.

At the outset of trial in November 2019, approximately 15 months after the trial court's temporary order allowing the relocation, David withdrew his objection to the relocation. He similarly abandoned requests for full custody, sole decision-making authority, and restrictions on Maira. He still sought to alter provisions of the parenting plan related to residential time and removal of the restrictions related to substance abuse, and sought "some clarifications" of other provisions. Maira characterized David's attempt to modify the parenting plan by objecting to relocation as "retaliatory." She asked the court to make no changes to the parenting plan. She also requested an award of attorney fees based on David's

6

intransigence and his "bad faith" in objecting to the relocation, only to withdraw the objection at trial.

In November 2019, after considering the testimony of David, Maira, the GAL, and Franks, the trial court described David's tactic of seeking dramatic changes to the parenting plan by objecting to Maira's modest relocation as "drop[ping] the atomic bomb" on the case, which could have otherwise been easily and inexpensively resolved. The court noted that, prior to trial, David never amended or withdrew his objection.

While the Child Relocation Act, RCW 26.09.405-.560 permits modification of a parenting plan in the context of a proposed relocation, the court observed that "there was no substantial evidence at trial" to suggest a need for sole decision-making, or a change of custody based on the proposed move or Franks's history or behavior. Nevertheless, the court determined that the evidence established a substantial change of circumstances to support a minor modification of the parenting plan.[5] See RCW 26.09.260(5). In particular, the court found that formal restrictions on David related to substance abuse were initially warranted, but no longer necessary. Still, the court found it was appropriate to retain provisions similar to those in the 2013 plan to address

---

[5] In addition to other requirements, minor modifications under RCW 26.09.260(5) must meet at least one of the following criteria: (a) the requested residential changes do not exceed 24 full days in a calendar year, (b) the current plan is impractical because of a change in residence of the parent with whom the child does not reside the majority of the time or an involuntary change in the work schedule of either parent, or (c) (subject to additional restrictions) the current schedule does not provide reasonable time with the non-primary parent. RCW 26.09.260(5).

David's history of substance abuse and potential for relapse. The court altered the residential provisions to provide for David to have residential time with B.B. one weekend per month. The court also clarified some provisions of the 2013 plan with regard to holidays and the calculation of vacation days.[6]

The court found there was some evidence to support a finding of abusive use of conflict, but declined to make that finding "at this time." The court described various incidents and issues of concern, including David's objection to the relocation, his unilateral calculation of vacation time, his refusal to provide B.B.'s insurance card to Maira, and his insistence on controlling B.B.'s clothing and other property. The court found that while not solely responsible, "the father is probably more responsible than not for a lot of [the conflict]."

Finally, the trial court granted Maira's request for attorney fees based on David's intransigence. The court focused on David's objection to Maira's relocation, given that the move did not cause any logistical challenges or create a need to alter the residential provisions of the parenting plan, and David's failure to clarify his position until trial.

Prior to entry of the final orders, the court considered briefing and evidence related to the amount of the fee award. Maira presented evidence showing that as of June 19, 2020, more than six months after the trial concluded,

---

[6] Although the alterations to the parenting plan coincide to some extent with the GAL's recommendations, the trial court declined to consider some of the GAL's recommendations on the ground that her investigation exceeded the scope of her appointment.

she had incurred $37,887.50 in fees. David argued that, even assuming a basis for fees, Maira was entitled to less than the entire amount she incurred.

In the order on relocation, the court awarded fees of $28,222.96 to Maira and determined that amount to be "reasonable." The order provides, in relevant part:

> The court finds that the posture taken by the father created a case that needed to be litigated. By filing his objection in the way he did to the mother's relocation, where she moved 5 miles closer, the father "dropped the atomic bomb" on this case. The court did not find a basis for a major modification of the parenting plan, concluding that the there is no evidence that that this should be a 50/50 parenting plan, that the father should have sole custody or that joint decision making could not happen. The father's actions resulted in needless litigation and can be seen as an abuse of the process.

David appeals.

### Intransigence

David challenges the trial court's decision to award fees based on his intransigence.

A court may award attorney fees in a civil action if the award is authorized by statute, agreement of the parties, or a recognized equitable ground. In re Marriage of Greenlee, 65 Wn. App. 703, 707, 829 P.2d 1120 (1992). As an equitable remedy, "[a] trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney's fees on that basis." Greenlee, 65 Wn. App. at 708; Mattson v. Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). "Intransigence is the quality or state of being uncompromising." Schumacher v. Watson, 100 Wn. App. 208, 216, 997 P.2d 399 (2000) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1186 (3d ed. 1993)).

9

"Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly." In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015) (citing Greenlee, 65 Wn. App. at 708).

A party challenging an attorney fee award in a family law proceeding must demonstrate that the trial court abused its discretion. In re Marriage of Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). An attorney fee award amounts to an abuse of discretion when the court's decision is outside the range of acceptable choices or based on untenable grounds or untenable reasons. In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

According to David, the record reflects no basis on which the court could find him intransigent because it does not show that he engaged in "foot dragging," abused the discovery process, or filed repetitive, frivolous motions. He argues that the court imposed sanctions merely because he pursued "valid legal remedies," since Washington's relocation statute, RCW 26.09.260(6), allows a parent to object to relocation and to seek modification within that proceeding. And he contends it is not intransigent to request more substantial changes to a parenting plan than those the court is ultimately willing to adopt.

Simply because David did not engage in some types of behavior that courts have characterized as intransigent in other cases does not mean that David's conduct in this case was not also intransigent. David minimizes the

impact of his objection to Maira's proposed relocation. Not only did David object to Maira's proposal to relocate to a residence that was within five miles of his home, he sought "full custody" of B.B. He proposed reducing Maira's residential time to four overnights per month, less time than David had under the 2013 plan that imposed .191 restrictions on him. David also asked for "sole decision making" authority and for the imposition of parental restrictions on Maira on multiple grounds. It is clear from the record that the nature and extent of David's objection led Maira to retain counsel, to submit briefing and evidence in response to the objection, and to prepare for litigation of the relocation issue.

According to David, Maira knew that he was no longer challenging relocation after the court commissioner allowed Maira to move on a temporary basis. The record indicates otherwise. A significant portion of Maira's trial brief, submitted on the first day of trial, was devoted to a discussion of the relocation factors and argument that the court should permit the relocation. In addition, the GAL, who submitted a report two months before trial, also discussed the statutory standards for relocation and made a recommendation on that issue. It is true that the parties did not litigate the issue at trial after David dropped his objection to the relocation and focused instead on the restrictions he had agreed to six years earlier and altering the residential schedule. But changing his position at trial, 17 months after he lodged his objection, did not undo the impact of his conduct. See In re Marriage of Low, 44 Wn. App. 6, 10, 720 P.2d 850 (1986) (remanding for consideration of fees and holding that "petitioning party in a custody modification dispute may not avoid liability for the other party's

11

attorney's fees under RCW 26.09.140 or 25.09.260(2) by simply dismissing his petition.")

David's objections to the relocation were, at best, disingenuous. For instance, there was no basis to claim that Maira's move to Lynnwood, where he lived, would "disrupt" his contact with B.B. and the residential schedule. And, contrary to David's claim, there was no evidence to support the assertion that the relocation would affect academic "special arrangements" in place at B.B.'s school. Likewise, evidence did not support David's claim that Franks posed a danger to B.B. because of a "criminal record" and that "full custody and sole decision making" in his favor were necessary "to protect" her.

Parents undeniably have a statutory right to object to the proposed relocation of the parent with whom the child resides the majority of the time. See RCW 26.09.480. And, as David correctly points out, Washington's relocation statute allows a parent to petition for modification of the parenting plan in the context of a relocation proceeding "without a showing of adequate cause other than the proposed relocation itself." RCW 26.09.260(6). This provision authorizes the court to make "adjustments to the residential aspects of a parenting plan" in view of a "proposed relocation." RCW 26.09.260(6). In ruling on a modification pursuant to a relocation petition, the statute requires that the court first determine whether to allow the relocation, and then decide whether adjustments to the parenting plan are appropriate. This structure makes it clear that the provision was designed to allow the court to make changes to a parenting plan that arise from a relocation, and was not intended to serve as an

end run around the finding of adequate cause that is required to modify a parenting plan for other reasons.[7]  Here, David asserted wholly baseless objections to the relocation and employed a "bait and switch strategy" to seek parenting plan modifications unrelated to the relocation.  There was a tenable basis to conclude that David's conduct made the proceeding "unduly difficult and costly."  Wixom, 190 Wn. App. at 725, 727 (upholding fees based on intransigence where father and his counsel "pursued allegations and innuendos not well-grounded in fact, increased the cost of litigation, and continued to embarrass, threaten, and intimidate participants."); see also Burrill, 113 Wn. App. at 873 (intransigence supported fee award where mother made "unsubstantiated, false, and exaggerated allegations against [the father] concerning his fitness as a parent, which caused him to incur unnecessary and significant fees.").

David also argues that the court's determination of intransigence was premised on factual findings that are unsupported by substantial evidence in the record.  Specifically, David points out that because the parties did not litigate the relocation, no trial testimony or other evidence supports the court's finding that Maira sought to move "5 miles closer" to him.  But, to the contrary, there is ample evidence in the record to establish that Maira proposed a move of approximately

---

[7] Before trial, Maira argued that the court should not allow David to "hijack" the relocation proceeding to seek changes to the parenting plan that were unrelated to the proposed move, without a showing of adequate cause.  The court decided that it could consider David's proposed changes and modify the parenting plan upon a finding of a substantial change of circumstances, largely because the court had previously appointed the GAL to investigate issues beyond relocation. Maira did not file a cross appeal challenging modification of the parenting plan and therefore we do not address the trial court's ruling on this issue.

five miles, to a residence that was in the city where David lives and closer to his home.  David did not dispute any of these facts.

David also challenges the court's finding that his actions resulted in "needless" litigation.  He argues that because Maira opposed lifting the parental restrictions and changing the residential schedule, and the court ultimately amended those aspects of the parenting plan, the litigation was not "needless." But David protracted the resolution of the relocation, the basis for the proceeding, when there were no valid reasons to oppose it.  David's objections, maintained until trial, unnecessarily complicated the proceeding and increased the amount expended on attorney fees.  The record supports the court's findings and we cannot conclude that the court abused its discretion in awarding fees based on David's intransigence.[8]

### Amount of Attorney Fee Award

David also challenges the amount of the attorney fee award.   We review the reasonableness of an attorney fee award for an abuse of discretion.  Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

As explained, the trial court awarded most—but not all—of the fees Maira requested.  Consistent with David's argument below, the court declined to award the fees incurred post-trial and expressly found that the amount of attorney fees was "reasonable."

David claims the court abused its discretion because it failed to determine what portion, if any, of Maira's fees were attributable to "unsuccessful claims,"

---

[8] Because we conclude that the court acted within its discretion in awarding fees based on intransigence, we need not address Maira's arguments that fees were also awardable on certain statutory bases or under CR 11.

such as her resistance to removing restrictions and changing the residential schedule.[9]  But in contrast to the contract principles David relies on, see Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 143 Wn. App. 345, 364, 177 P.3d 755 (2008) (award based on provision of indemnification agreement in litigation involving multiple subcontractors), prevailing party analysis is not relevant to an attorney fee award based on intransigence.  Instead, the guiding principle is whether the intransigent conduct of one party caused the other party to incur increased legal costs.  See Greenlee, 65 Wn. App. at 708.  And where a party's intransigence "permeate[s] the entire proceedings, the court need not segregate which fees were incurred as a result of intransigence and which were not."  Burrill, 113 Wn. App. at 873.  Here, the court's finding that David "dropped the atomic bomb on this case" is equivalent to a finding that his intransigence was pervasive to the proceeding.

David also complains that the trial court did not explain the basis for its determination that the fees Maira incurred though trial were reasonable.  But the court considered Maira's counsel's fee affidavit setting forth her rate and experience and the billing records that specified the hours expended on specific tasks.[10]  David does not claim that the attorney's hourly rate was unreasonable or identify any time that was unreasonably devoted to a particular task.  He fails to establish an abuse of discretion in determining the amount of the fee award.

---

[9] In challenging both the basis and amount of fees, David suggests the trial court was required to consider the respective financial resources of the parties.  But the trial court did not impose fees based on consideration of the parties' financial resources under RCW 26.09.140.  And, as here, where the court awards fees due to intransigence, financial resources are irrelevant.  Burrill, 113 Wn. App. at 873.

[10] After David filed his opening brief, Maira filed a supplemental designation of Clerk's Papers, which included her attorney's fee affidavit and billing statements reviewed by the court below.

<u>Fees on Appeal</u>

Maira requests attorney fees and costs on appeal. RAP 18.1 allows this court to award fees and costs if authorized by applicable law. Maira relies on RCW 26.09.140, which allows the court in family law cases to order a party to pay another party's reasonable attorney fees on appeal after considering the financial resources of both parties. <u>See</u> <u>In re Marriage of Raskob</u>, 183 Wn. App. 503, 520, 334 P.3d 30 (2014); <u>In re Marriage of Crosetto</u>, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). Maira presented meritorious arguments on appeal and complied with RAP 18.1 by properly requesting fees in her brief and filing a declaration of financial need. Her financial declaration filed September 17, 2021 establishes her need to recover fees. Therefore, based on her declaration and because David did not counter with evidence demonstrating his inability to pay or challenge her declaration, we grant Maira's request for attorney fees, in an amount to be determined by a commissioner of this court upon compliance with RAP 18.1(d). <u>See</u> <u>Mansour v. Mansour</u>, 126 Wn. App. 1, 17, 106 P.3d 768 (2004).

Affirmed.

_____

WE CONCUR:

_____     Appelwick, J.