# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 58812-9-II |
| ALLISON MARIE CLINTON nka ALLISON MARIE TAYLOR,[†] | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PRESTON JAMES EVERETT CLINTON, | |
| Appellant. | |

CHE, J. — Preston J. Clinton appeals following a dissolution from Allison M. Taylor.

Clinton and Taylor's marriage dissolved after having two children together. Following trial, the trial court found Clinton had a history of domestic violence/coercive control and abusive use of conflict. The trial court applied RCW 26.09.191(3)(a), as well as RCW 26.09.191(2)(a), a statutory provision requiring a trial court to limit a parent's residential time with their children if it finds that the parent has a history of domestic violence. The trial court accordingly limited Clinton's residential time with his children.

Clinton brings a constitutional challenge to RCW 26.09.191(2)(a) and appears to argue it is facially unconstitutional. Taylor contends that an alternative basis exists to affirm the trial court's decision. Both parties seek attorney fees and costs on appeal.

---

[†] At the time of the dissolution, Respondent's name was Allison Marie Clinton. Respondent is now known as Allison Marie Taylor. Since recent court documents refer to her by that name, we will do so in this opinion.

We decline to reach Clinton's constitutional claim because the trial court also found

Clinton engaged in an abusive use of conflict under RCW 26.09.191(3)(e), and, thus, had the

discretion to limit Clinton's residential time separate from the mandate contained in RCW

26.09.191(2)(a).

Accordingly, we affirm the trial court's decisions in the dissolution proceeding and deny

awarding attorney fees and costs to either party on appeal.

FACTS

Clinton and Taylor married in 2007 and had two children together, one born in 2015 and

another born in 2018.  In 2020, Clinton and Taylor separated, and Taylor petitioned for divorce

in 2021.

Throughout their marriage and continuing through the subsequent divorce proceedings,

Clinton engaged in a pattern of coercive control and abusive use of conflict,[1] including verbal

abuse, psychological and emotional abuse, threats of physical violence, physically confining and

restraining Taylor, isolating Taylor from friends and family, and damaging and destroying

marital property.  His behaviors included "[d]rawing the children in as agents of abuse against

their mother" and also "[p]erpetuating tensions and discord . . . by words or actions in front of

the children that have the impact of minimizing, marginalizing, humiliating, or degrading [their]

mother."  Clerk's Papers (CP) at 216.

---

[1] "Coercive control" is a form of domestic violence where one uses a pattern of behavior to cause another physical, emotional, or psychological harm and with the purpose or effect of unreasonably interfering with the victim's free will and liberty.  CP at 215 (citing to RCW 7.105.040(4) and RCW 7.105.010(9)(a)).  The trial court described "abusive use of conflict" as including "us[ing] conflict in a way that may cause serious damage to the psychological development of a child."  CP at 260.

Clinton's pattern of such behavior "placed [Taylor] in fear and had a destabilizing effect upon her." CP at 217. As a result of the conflict Clinton "instigate[d] and perpetuate[d]," one of their children experienced cardiac arrythmia and acted aggressively toward Taylor and her family. CP at 217. The other child experienced chronic constipation and acted protectively and defensively of Taylor. Both children refused to talk about certain topics with Taylor and difficulties resulted during visitation transfers.

Leading up to the trial for the dissolution, the trial court found Clinton in contempt multiple times. In February 2022, Clinton failed to pay Taylor child support and expense payments as well as medical support payments and one-half of Clinton's income tax refund pursuant to a previous court order. In addition to ordering Clinton to pay the past due payments, the trial court also ordered Clinton to pay Taylor's lawyer fees and costs. Then, in January 2023, the trial court found Clinton in contempt after finding that Clinton, in bad faith, failed to pay half of his income tax refund as he was ordered to do. The trial court again ordered Clinton to pay Taylor's attorney fees and costs as well as one-half of Clinton's income tax refund again. In May and June, the trial court heard two other motions for contempt and ordered Clinton to pay Taylor $1,500 in attorney fees for each.

Following trial in August 2023, the court entered a written dissolution decree, findings and conclusions regarding the marriage, and a parenting plan. The trial court found two reasons under RCW 26.09.191 for "putting limitations" on Clinton. CP at 260. The trial court found that Clinton had a history of domestic violence as defined in RCW 7.105.010 and that Clinton "use[d] conflict in a way that may cause serious damage to the psychological development of a child." CP at 260. Because of these findings, the trial court imposed a parenting plan that

3

required Clinton to continue mental health therapy and parenting classes, among other conditions, and allocated the children to Clinton every other weekend, some holidays, and two uninterrupted weeks every July.

The trial court also found that Clinton had failed to comply with discovery requirements leading up to and through the date of trial. The trial court ordered Clinton to pay attorney fees to Taylor for those violations and also awarded Taylor a $17,000 sanctions award for Clinton's failure to produce discovery and comply with the court's various orders.

Since the trial court's ruling, the trial court has found Clinton in contempt twice more. In April 2024, the trial court found Clinton in contempt for interfering with and delaying the listing and sale of a home which was ordered to be sold as part of the dissolution decree. The trial court imposed sanctions on Clinton and also awarded Taylor attorney fees and costs. A little over a week later, the trial court found Clinton again in contempt, this time for failing to pay ordered child support payments, which was required under the child support order, while Clinton had the ability to make the payments.

Clinton appeals.

ANALYSIS

Clinton argues that RCW 26.09.191(2)(a), which requires a court to limit a parent's residential time if it finds that the parent has a history of domestic violence, is unconstitutional because it "imposes an unreasonable and unconstitutional barrier to a parent's right of access to his or her child." Br. of Appellant at 1. Taylor contends that we need not reach this constitutional claim because an alternative basis within the same statute exists to affirm the trial

4

court's limitation of Clinton's residential time. We agree with Taylor and decline to consider Clinton's constitutional claim.

As a well-established rule of judicial restraint, we will not consider the constitutionality of a statute if the case can be decided upon different grounds. *State v. Rodgers*, 146 Wn.2d 55, 60, 43 P.3d 1 (2002); *see also In re Marriage of Porter*, 3 Wn.3d 579, 598, 555 P.3d 379 (2024). Additionally, "[o]n appeal, 'we may affirm the [lower] court on any grounds established by the pleadings and supported by the record.'" *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003) (alteration in original) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 752, 766, 58 P.3d 276 (2002)).

Trial courts are granted "broad discretion" in making parenting plan decisions, and we only review such decisions for an abuse of discretion. *French v. French*, 32 Wn. App. 2d 308, 314, 557 P.3d 1165 (2024). An abuse of discretion exists if the trial court makes its decision based on untenable grounds or reasons, or its decision is manifestly unreasonable. *Id.*

RCW 26.09.191(2)(a) provides that "[a] parent's residential time with [a] child shall be limited if it is found that the parent has engaged in any of the following conduct: . . . (iii) a history of acts of domestic violence as defined in RCW 7.105.010."[2] However, another

---

[2] RCW 7.105.010 defines "[d]omestic violence" as:

(a) Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner; or

(b) Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one family or household member by another family or household member.

provision of the statute, not challenged by Clinton, also permits a trial court to discretionarily limit a parent's residential time if its finds "[t]he abusive use of conflict by the parent which creates a danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

Here, the trial court found both that Clinton had a history of coercive control, a type of domestic violence falling within RCW 7.105.010, and that Clinton also "use[d] conflict in a way that may cause serious damage to the psychological development of a child." CP at 260. On appeal, Clinton does not challenge any of the trial court's findings, including those regarding his abusive use of conflict, and so we treat the trial court's findings as verities. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992) (holding that an unchallenged finding is a verity on appeal); *see also In re Marriage of C.M.C.*, 87 Wn. App. 84, 87, 940 P.2d 669 (1997).

Upon finding that Clinton had used conflict in a way that endangered his children's psychological development, RCW 26.09.191(3)(e) permitted the trial court to limit any part of the parenting plan. Therefore, separate from the mandatory limitation required by section .191(2)(a), the trial court had the authority and broad discretion to limit Clinton's residential time due to its abusive use of conflict finding.

Because an alternative basis exists to affirm the trial court's decision to limit Clinton's residential time, we decline to reach Clinton's constitutional arguments and affirm on the non-constitutional grounds.

SANCTIONS, ATTORNEY FEES, AND COSTS

Both parties ask this court to order the other to pay their attorney fees. Taylor asks this court to sanction Clinton under RAP 18.9(a) and order Clinton to pay her attorney fees and expenses. Alternatively, Taylor asks us to award fees because of Clinton's intransigence. Finally, Clinton asks this court to order Taylor to pay reasonable attorney fees and costs under RCW 26.09.140.

A.      *RAP 18.9(a)*

Turning to Taylor's request first, Taylor asks us to sanction Clinton for bringing a frivolous appeal that is "nothing more than a 'delay.' " Br. of Resp't at 44.

An appeal is frivolous and, therefore, brought for the purpose of delay, if "there are no debatable issues on which reasonable minds might differ, and the appeal is so totally devoid of merit that there was no reasonable possibility of reversal." *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). "An appeal that is affirmed simply because the arguments are rejected is not for that reason alone frivolous." *Id*. And any doubts as to whether an appeal is frivolous should be resolved in favor of the appellant. *Id*.

Under these rules and resolving the appeal in favor of Taylor without addressing Clinton's constitutional argument, we are not convinced that Clinton's appeal was brought frivolously. Therefore, we decline to award fees and costs on this basis.

B.      *Equitable Remedy for Intransigence*

In the alternative, Taylor asks us to award an equitable remedy because of Clinton's intransigence both on appeal and at the trial court.

If applicable law allows, we may grant a party an award of reasonable attorney fees and expenses on appeal. RAP 18.1(a); *see also In re Marriage of Bresnahan,* 21 Wn. App. 2d 385, 413, 505 P.3d 1218 (2022). As an equitable remedy, we may award attorney fees based on a party's intransigence before the trial court. *Id.* We may also award such fees when a spouse has been intransigent and their "appeal 'amounts to little more than an effort to carry on with the same efforts which caused [them] to lose credibility with the trial court.'" *Id.* (alteration in original) (quoting *In re Marriage of Sievers*, 78 Wn. App. 287, 312, 897 P.2d 388 (1995)). Our courts have awarded such rewards for behaviors such as "foot-dragging," "obstruction," filing repeated and unnecessary motions, or causing the proceeding to be unduly difficult and increased legal costs by their actions. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). And we do not need to consider the financial resources of the intransigent party when awarding attorney fees on this basis. *Bresnahan*, 21 Wn. App. 2d at 413.

Clinton's intransigence before the trial court is well-recorded. Below, the trial court found Clinton in contempt multiple times and also imposed significant sanctions due to multiple violations during discovery. Even since trial has ended, Clinton has continued to be intransigent by obstructing the ordered sale of the family home and refusing to pay support payments he owes. However, we are not convinced that Clinton's actions on appeal warrant this equitable award when it is not clear that Clinton has continued his intransigence into this appeal and Taylor has already been awarded attorney fees for Clinton's intransigence below.

Because the record does not show intransigence stemming from Clinton's actions on appeal, we deny Taylor's request.

C.    *RCW 26.09.140*

Finally, considering Clinton's request, under RCW 26.09.140, we have the discretion to order a party to pay reasonable attorney fees and costs of maintaining the appeal following a dissolution proceeding. *See French*, 32 Wn. App. 2d at 319, "In exercising our discretion, we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *Id*.

Since we do not reach the merits of Clinton's claim, we decline to award him attorney fees under RCW 26.09.140.

Thus, we decline to award either party's request for attorney fees on appeal.

## CONCLUSION

We affirm the trial court's decisions below.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.

9