# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>BRYCE MICHAEL FRENCH,<br><br>    Respondent,<br><br>  v.<br><br>SARAH ANN FRENCH,<br><br>    Appellant. | No. 58291-1-II<br><br><br>ORDER GRANTING MOTION TO<br>PUBLISH AND PUBLISHING OPINION |

   Appellant has moved to publish this court's opinion filed on September 17, 2024. After consideration, the court grants the motion. Accordingly, it is

   **ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

   **ORDERED** that the opinion will now be published.

   **FOR THE COURT**

   **PANEL**: Jj. GLASGOW, PRICE, CHE

_____
  PRICE, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of | No. 58291-1-II |
| BRYCE MICHAEL FRENCH, | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SARAH ANN FRENCH, | |
| Appellant. | |

PRICE, J. — Sarah French appeals a parenting plan for her son, G.F., following her divorce from Bryce French.  The trial court had found that Bryce had a history of acts of domestic violence, but the parenting plan gave joint decision-making to both Sarah and Bryce for G.F. and allowed Bryce up to 12 days per month of residential time with G.F.[1]

Sarah argues that the trial court abused its discretion because the finding of domestic violence history precludes joint decision-making and requires the trial court to limit Bryce's residential time with G.F.  Sarah also requests attorney fees for her appeal.

We agree with Sarah and reverse the trial court.  We remand for the trial court to incorporate the mandatory restrictions into a corrected parenting plan.  We also award Sarah attorney fees.

---

[1] Because Bryce and Sarah have the same last name, we refer to them by their first names.  We intend no disrespect.

FACTS

Sarah and Bryce were married in April 2019. The couple's son, G.F., was born about one year later. Throughout their relationship, Bryce was allegedly abusive toward Sarah. After they had an argument in June 2021, Bryce told Sarah to "pack [her] things and get out." Verbatim Rep. of Proc. (VRP) at 281. Sarah took this as her opportunity to escape the abusive relationship and moved to New Mexico to live with her parents, taking G.F. with her. Bryce filed for divorce one month later.

Prior to trial, the trial court temporarily ordered that Bryce could have two monthly visits with G.F., with 25 percent of them occurring in Washington. Because of the expense and work conflicts, Bryce only used a small portion of his visits—about one visit every other month.

The divorce proceeded to trial. Bryce and Sarah had already agreed on the division of property, so the trial focused on determining a parenting plan.

Sarah testified extensively about Bryce's abusive behavior, including incidents that occurred in front of G.F. Sarah testified that Bryce had, in addition to other incidents, intentionally slammed a car door against her leg, put his hands around her neck hard enough to make her cough, repeatedly kicked her feet out from under her so that she would fall to the ground, grabbed her arm hard enough to leave a handprint, and threw a rock at her head. Sarah also testified that during two different arguments, Bryce retrieved a pistol from a gun safe and cocked it while walking away, which Sarah interpreted as threatening. Sarah said Bryce had apologized after each instance of abuse and would assure her that his abusive behavior would end when the couple reached certain benchmarks—like marriage or having children. But the abuse did not end. Sarah explained that Bryce denied that he was physically abusive because he defined physical abuse as being punched

in the face, which had not occurred. Sarah also testified that Bryce treated her like she was his property:

> He just assumed that since I was his wife, that I had to be physical with him. And so, he said that I was his wife and that he could touch me wherever he wanted, and I would tell him multiple times to not touch me places, and he would do it anyways. And his justification was, well, I'm his property, so he can do whatever he wants with me.

VRP at 232.

Sarah additionally testified about the many ways that Bryce had emotionally abused her. Bryce would blame the couple's fights and his own mental health problems on Sarah's lack of intimacy toward him. Bryce isolated Sarah from her family that lived in New Mexico, arguing that speaking with them made Sarah "miss New Mexico more." VRP at 234. When Sarah had previously wanted to leave the relationship, Bryce would threaten either to "kill [him]self" or to "turn to drugs and be one of the people that are walking on the streets," making Sarah feel responsible for his mental health and obligated to stay in the relationship. VRP at 234. Sarah also testified that Bryce had problems with alcohol use and struggled with managing his anger.[2]

Sarah also referenced the report from an appointed guardian ad litem (GAL) who had determined that Bryce was verbally, emotionally, and physically abusive toward Sarah. From this evidence, Sarah asked the trial court for a finding of a history of domestic violence. Sarah argued that such a finding would justify limiting Bryce's parenting to avoid risks of harm to G.F.

---

[2] Bryce generally denies Sarah's recounting of Bryce's behavior. While Bryce's brief admits that Bryce told the guardian ad litem that he had some angry outbursts against Sarah, including hitting his hand on a toolbox and hitting Sarah with a pillow, Bryce denied putting his hands around Sarah's neck, using a gun to intimidate her, throwing the pillow with intent to hurt her, or screaming at her.

Also testifying at the trial was the appointed GAL. The GAL agreed with Sarah's request for a finding of a history of domestic violence. But the GAL recommended joint decision-making between Sarah and Bryce. The GAL also disagreed with Sarah about Bryce being a danger to G.F. and, accordingly, recommended two visits with Bryce per month, either in Washington or New Mexico.

Sarah objected to two monthly visits. She claimed that she could not afford her proportional share of expenses for these visits (and, she asserted, neither could Bryce). Sarah alleged that when the temporary parenting plan was in place, Bryce had used travel arrangements, like late night flights, to harm her and G.F. Thus, Sarah asked for one visit in Washington every three months and any other visits in New Mexico at Bryce's expense.

The trial court ultimately agreed with Sarah to make a finding of a history of domestic violence, and it included the finding in the final parenting plan order. The trial court ordered the following limitations resulting from this domestic violence finding:

> (1) BRYCE MICHAEL FRENCH start and comply with treatment as recommend by [a domestic violence evaluator's] Domestic Violence Assessment at his cost. He shall provide a copy of all compliance reports to Respondent and/or her attorney.
>
> . . . .
>
> (4) BRYCE MICHAEL FRENCH shall **not** consume alcohol or non-prescribed substances including marijuana (THC) during his residential time with the child.

Clerk's Papers (CP) at 136. Once Bryce's treatment was completed, the final parenting plan order included language that would remove the requirement for domestic violence treatment ("[u]pon successful completion of the domestic violence treatment plan . . . the court will allow the removal"

of the limitation requiring the treatment). CP at 136. The trial court orally explained that the removal of the limitation would *not* remove the finding of a history of domestic violence:

> So, the 3(a) limitation says there's a history of domestic violence, and domestic violence is presented in very, very broad terms. I mean, that can mean a whole host of things.
>
> So, I think there is a history of domestic violence. . . .
>
> So, I'm fine keeping the history portion in there, because I think that's an accurate statement, and I'm okay in removing the limitation that comes thereby once the completion of the treatment is verified.

VRP at 436-37.

However, notwithstanding the domestic violence finding, the trial court ordered joint decision-making on major decisions involving education, health care, and religion, while Sarah would be primarily responsible for day-to-day care decisions.

Regarding residential time, the trial court did not make an express finding that residential time limitations were unnecessary but noted that regular visits with Bryce were "exactly what [G.F.] need[ed]." CP at 91. Thus, the trial court ordered that before G.F. was school-aged, Bryce would receive 4-day-long (up to 96 hours, which could technically span four nights and five days) visits two times per month, which "c[ould] occur in New Mexico or Washington," with an optional third visit in New Mexico.[3] CP at 138.

---

[3] This language comes from the final parenting plan entered in May 2023. In March, two months before entering this final parenting plan, the trial court sent the parties an initial outline of what would be included in the parenting plan; the March document stated that Bryce would get two visits each month with G.F., both to occur in Washington, with an optional third visit in New Mexico. Notwithstanding the less specific language of the final parenting plan, the parties appear to generally agree that the parenting plan provides for two monthly visits with Bryce in Washington.

The trial court also awarded Sarah $3,000 in attorney fees.

Sarah appeals.

ANALYSIS

I.  TRIAL COURT ERRED WHEN IT DID NOT IMPOSE LIMITATIONS UNDER RCW 26.09.191

Sarah argues that the trial court abused its discretion when its parenting plan order did not comply with mandatory limitations for a parent who is found to have a history of domestic violence.  Sarah argues that the trial court erred when it did not limit Bryce's decision-making authority and impose sufficient limitations on Bryce's residential time with G.F.  We agree.

We review the trial court's parenting plan decisions for an abuse of discretion.  *In re Marriage of Abbess*, 23 Wn. App. 2d 479, 484, 516 P.3d 443 (2022).  And while the trial court has broad discretion in the context of a parenting plan, its discretion must be exercised within the confines of applicable statutes.  *In re Marriage of Chandola*, 180 Wn.2d 632, 658, 327 P.3d 644 (2014).  An abuse of discretion occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons.  *Abbess*, 23 Wn. App. 2d at 484.  A decision is based on untenable grounds or reasons if it is factually unsupported or was reached by applying an incorrect legal standard.  *Id.*

The law *requires* limitations to a parent's decision-making and, usually, residential time when that parent has been found to have a history of domestic violence.  RCW 26.09.191(1), (2).  The statute governing restrictions in parenting plans includes mandatory limitations:

> (1)  The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: . . . (c) a history of acts of domestic violence[.]

7

(2)(a) The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: . . . (iii) a history of acts of domestic violence[.]

RCW 26.09.191; *see also In re Marriage of Watson,* 132 Wn. App. 222, 231-32, 130 P.3d 915 (2006).

Sarah's first issue with the trial court's parenting plan is its provision for joint decision-making. She argues that the trial court abused its discretion when, notwithstanding the finding of a history of acts of domestic violence, it ordered that both parents would have joint decision-making ability on major decisions on medical, education, and religion. We agree.

The statute plainly states that a parenting plan cannot require mutual decision-making when a parent has been found to have a history of domestic violence. RCW 26.09.191(1). Thus, when the trial court ordered that both parents would contribute to making major decisions despite specifically finding that Bryce had a history of domestic violence, the statute was violated.

Sarah's second issue with the parenting plan is the residential time. She argues that the trial court erred when it did not limit Bryce's residential time despite making the domestic violence finding. We agree that the trial court's residential time limitations do not meet the requirements of the statute.

Beyond the mandate that limitations *shall* be imposed, the statute further explains the limitations that must be implemented on residential time. The statute provides,

The limitations imposed by the court under [(2)](a) . . . of this subsection shall be reasonably calculated to protect the child from the physical, sexual, or emotional abuse or harm that could result if the child has contact with the parent requesting residential time. *The limitations shall also be reasonably calculated to provide for the safety of the parent who may be at risk of physical, sexual, or emotional abuse or harm* that could result if the parent has contact with the parent requesting residential time. The limitations the court may impose include, but are not limited

8

> to: Supervised contact between the child and the parent or completion of relevant counseling or treatment.

RCW 26.09.191(2)(m)(i) (emphasis added). The statute does not specify what the limitations on the abusive parent's residential time must be and instead allows for a flexible approach that may be tailored to the specific case at hand. 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE, FAMILY AND COMMUNITY PROPERTY LAW § 33:23, at 326 (2nd ed. 2015) ("[Limitations] must be tailored based on the individual circumstances, and could range from limits such as the parent cannot drink or drive while with the children, to supervised visitation, or reduced parenting time, all the way to suspended parenting time.").

An exception to the mandatory limitation of residential time exists if the trial court "*expressly finds* based on the evidence that contact between the parent and the child will not cause . . . harm to the child and that the probability that the parent's . . . abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations[.]" RCW 26.09.191(2)(n) (emphasis added).

Here, it appears the trial court did not follow the statutory requirements for limitations on residential time. The trial court did not make any express finding under RCW 26.09.191(2)(n) that residential time would not cause G.F. harm. Thus, the trial court was required to limit Bryce's residential time and, within these limitations, account for Sarah's safety as the victim of Bryce's abuse. RCW 26.09.191(2)(m)(i). It is true the trial court imposed some limitations by requiring Bryce to undergo domestic violence treatment and requiring him not to consume alcohol or other nonprescription substances while with G.F. But it does not appear that the trial court

9

overtly considered Sarah's safety in fashioning limitations (a requirement of the statute), especially in the context of the history of emotional abuse in the record.

Indeed, the trial court ordered that Bryce could have up to three visits per month (two mandatory, one optional) of 4-day-long durations with G.F. before he is school-aged—up to 12 days per month. Critically, each of these visits would require substantial contact and coordination between Bryce and Sarah. Considering that G.F. resides in New Mexico with Sarah and Bryce resides in Washington, the potential for 12 days per month is not only generous residential time, but it would require almost constant interaction between Bryce and Sarah. In fact, if all three potential visits occur, G.F. will be transferred between the parties up to six times per month, an average of 1.5 hand-offs per week. Under these circumstances, without more explanation from the trial court, we cannot conclude that this schedule is an appropriate limitation on Bryce's residential time that is "reasonably calculated to provide for the safety of the parent who may be at risk of physical, sexual, or emotional abuse or harm." *See* RCW 26.09.191(2)(m)(i).[4]

The trial court abused its discretion when it gave Bryce joint decision-making for G.F. and when it did not properly limit Bryce's residential time to protect Sarah as the victim of domestic violence. We remand for the trial court to correct its order and fulfill the requirements of RCW 26.09.191(1) and (2).

---

[4] Bryce contends that we should determine that the trial court intended for any .191 limitations to be removed from the parenting plan once Bryce's domestic violence treatment was completed and that such removal is imminent. But our review is focused on the current terms of the parenting plan.

II.  BRYCE'S MONTHLY VISITS

Separate from her argument about limitations of residential time, Sarah argues that the trial court abused its discretion with the number of visits it ordered between Bryce and G.F.  Sarah claims the trial court ordered more visits than the parties could reasonably afford given that she and Bryce live in two different states.

We need not address Sarah's argument.  As noted above, we are remanding the parenting plan back to the trial court to abide by the limitations in RCW 26.09.191(2).  When the trial court properly imposes the statutorily required limitations, the timing and duration of visits will presumably be affected.  Thus, a determination on this issue would be potentially advisory for future parenting plans and decisions.  Advisory opinions are disfavored, and courts have declined to issue such opinions in other family law cases.  *State v. Norby*, 122 Wn.2d 258, 269, 858 P.2d 210 (1993); *see In re Marriage of Eklund*, 143 Wn. App. 207, 211, 177 P.3d 189 (2008) (declining to issue advisory opinion on correctness of trial court's advisory oral ruling on parenting plan); *In re Marriage of Davisson*, 131 Wn. App. 220, 226-27, 126 P.3d 76 (declining to issue advisory opinion regarding legal question that might arise in future parenting plan disputes, but was not material to case), *review denied*, 158 Wn.2d 1004 (2006).  So rather than assess the trial court's exercise of discretion on these visits when those decisions may change on remand, we do not further consider this argument.

III. ATTORNEY FEES

Sarah requests attorney fees for her appeal.

We may grant a party an award of attorney fees on appeal if applicable law allows. RAP 18.1(a). Relevant to this case, chapter 26.09 RCW includes a provision regarding attorney fees. RCW 26.09.140 states, "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter[.]" The statute also gives us the discretion to "order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees . . . ." RCW 26.09.140. "In exercising our discretion, we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555, *review denied*, 180 Wn.2d 1012 (2014).

Here, Bryce was found to have had a history of domestic violence. Sarah brought this appeal to ensure the parenting plan meets the statutory requirements in such a case, and she has prevailed. Reviewing Sarah's affidavit of financial need required under RAP 18.1(c), we exercise our discretion to award her attorney fees.[5]

---

[5] Bryce also requests attorney fees under RCW 26.09.140. Bryce frames his argument for attorney fees in the context of invited error, asserting that because Sarah agreed to mutual decision making at trial, Bryce should not be responsible for the attorney fees incurred to resolve the error. We exercise our discretion to deny Bryce's attorney fees request.

No. 58291-1-II

CONCLUSION

We reverse and remand for the trial court to incorporate the mandatory restrictions of RCW 26.09.191(1) and (2) into a corrected parenting plan. We also award Sarah her attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
GLASGOW, P.J.

_____
CHE, J.

13