# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>CHESSICA ARNTSON,<br><br>                 Respondent,<br><br>and<br><br>CHAD OPHEIKENS,<br>                 Appellant. | No. 58443-3-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Chessica Arntson and Chad Opheikens dissolved their marriage in June 2022. After a bench trial, the trial court found that Opheikens had a history of domestic violence, in part based on a prior domestic violence assault conviction. The trial court then entered a parenting plan restricting Opheikens' parenting time and decision making for the parties' three children under RCW 26.09.191. The trial court also entered a restraining order prohibiting Opheikens from contacting Arntson.

Several months later, Opheikens moved for joint decision making and an increase to equal residential time. Arntson agreed in part, conceding that a modest increase in Opheikens' residential time would be in the children's best interest but objected to any other modification.

The trial court concluded that Opheikens failed to demonstrate major modification of the parenting plan was warranted but considered his motion for minor modification. At Arntson's request, the trial court entered a new final parenting plan ordering a residential schedule of four nights every other week with Opheikens, but the court made no other changes from its prior

parenting plan. Finally, the court entered a restraining order prohibiting Opheikens from contacting Arntson but clarifying that exchanging the children would not be a violation of the order. The trial court also denied Opheikens' motion for reconsideration.

Opheikens appeals, challenging the final parenting plan and restraining order and denial of reconsideration. We affirm the challenged orders. We deny Opheikens' request for attorney fees and we grant Arntson's request for attorney fees as a sanction for filing this frivolous appeal under RAP 18.9(a).

FACTS

I. BACKGROUND

Chessica Arntson and Chad Opheikens dissolved their marriage in June 2022. After a bench trial, the trial court found that Opheikens had a history of domestic violence, in part based on Opheikens' 2019 conviction for a domestic violence assault against Arntson.[1] The trial court also found Opheikens engaged in abusive use of conflict. The trial court then entered a parenting plan restricting Opheikens' parenting time under RCW 26.09.191 and giving sole decision making regarding the parties' three children to Arntson. The trial court also entered a restraining order against Opheikens prohibiting him from contacting Arntson. After hearing "many, many, many motions" filed by Opheikens in the following months, the trial court entered an order restricting his abusive litigation. Verbatim Rep. of Proc. (VRP) at 32.

---

[1] Opheikens does not dispute the existence of this conviction.

II. APRIL 2023 FINAL ORDERS

A.    Parenting Plan

In 2023, Opheikens filed a motion requesting equal residential time and shared decision making, and he proposed that the domestic violence finding and corresponding limitations on his parenting should be removed. Opheikens submitted a proposed parenting plan that included a finding that neither parent should have any restrictions under RCW 26.09.191.

Arntson responded, arguing that Opheikens should still be subject to restrictions under RCW 26.09.191. Nevertheless, Arntson agreed that additional time with Opheikens would be in the children's best interest, but that his residential time should be increased only minimally, so as not to disrupt the children's stability. Arntson submitted a proposed parenting plan granting Opheikens four days of residential time every other week. Arntson's proposed parenting plan included findings that Opheikens had a history of domestic violence as defined in RCW 26.50.010, as well as abusive use of conflict and therefore it limited his parenting time and decision making under RCW 26.09.191.

The court heard argument on Opheikens' motion to increase his residential time with the children.[2] Arntson explained that she did not oppose a modest increase in Opheikens' parenting time, but she requested that any changes to the parenting plan be incorporated into final orders for the parties to refer back to. Arntson and Opheikens both testified that they believed it was good

---

[2] Opheikens filed his request as a petition for modification, but at oral argument the court explained that to the extent Opheikens filed a petition for major modification of the earlier parenting plan, the court had not granted Opheikens leave to file such a petition. Opheikens agreed that he did not have leave to file a petition for major modification, and that his filing "was not meant to be a petition to start all over." VRP at 5. The court explained that it was therefore dismissing the petition and treating his filing as a motion for increased residential time. We interpret this to mean that the trial court treated Opheikens' motion as one for minor modification.

for the children to spend residential time with Opheikens. However, Arntson argued that the restraints from the prior order were still necessary under RCW 26.09.191.

Opheikens argued for equal time based on the children's preferences. Additionally, in an attempt to argue that he was not a danger to the children, Opheikens explained that he was not "found guilty in 2019 of domestic violence" after a trial, but instead he "pled guilty." VRP at 14. The court stopped this line of argument to explain that the challenged restrictions were mandatory under RCW 26.09.191 because "[a]t trial [the court] found there was a history of domestic violence." VRP at 15. The court then commended Opheikens' "progress," but the court also expressly declined Opheikens' request to make the findings necessary under RCW 26.09.191(2)(n) to override the previously imposed RCW 26.09.191 restrictions. *Id.* Absent the necessary findings, the trial court concluded that "there is no mechanism to really change that finding [of domestic violence.]" *Id.* Later, Opheikens again began to argue for his proposed equal residential schedule, but the court again stopped him to explain that this was not permitted after a finding of domestic violence, and Opheikens repeatedly told the court that he understood.

Ultimately, the court partially granted Opheikens' motion and found that Arntson's proposed parenting plan was in the children's best interests. Accordingly, the court increased Opheikens' residential time to four days every other week. Upon Arntson's request, the court incorporated these minor changes into a new final order. In the final parenting plan entered in April 2023, the court concluded that it was required to limit Opheikens' major decision making under RCW 26.09.191 because it found that Opheikens had "a history of domestic violence as defined in RCW 26.50.010." Clerk's Papers (CP) at 168. The court also concluded that limiting Opheikens'

decision making was reasonable because of its finding that Opheikens "use[d] conflict in a way that may cause serious damage to the psychological development of a child." *Id.*

B.      Restraining Order

At the hearing on his motion for increased residential time, Opheikens did not argue for the restraining order to be lifted but made several comments about Arntson asking him to drop off or pick up the children, which Opheikens characterized as a violation of the then-existing restraining order. Arntson stated that she did not think exchanging the children was a violation of the then-existing restraining order but said she would be "terrified" to interact with Opheikens outside of those instances. VRP at 19.

The court explained that "a restraining order must be in place" because it had "already found a history of domestic violence." VRP at 19-20. Nevertheless, the court clarified that picking up and dropping off the children would not violate the order. Opheikens then clarified he "was not advocating for the loss of the restraining order." VRP at 20.

The court entered a new final restraining order including a provision that exchanging the children would not be a violation. The restraining order was based on the court's finding that Opheikens was a credible threat to Arntson's physical safety.

C.      Motion for Reconsideration

Opheikens moved for reconsideration in May 2023, and the court allowed his motion despite its order restricting abusive litigation. In Opheikens' motion, he again asked for joint decision making and equal residential time. Opheikens acknowledged that the court made an oral finding under RCW 26.09.191 that restrictions were mandatory due to his history of domestic violence.

Opkeikens also requested that the court "keep the restraining order, for Ms. Arntson, in place with one modification allowing the father to attend [their child]'s school sporting functions and school concerts even though it is also Ms. Arntson's place of employment." CP at 182. Arntson asked the court to deny the motion and to consider it abusive litigation.

Opheikens later submitted a declaration arguing that the parenting plan, restraining order, and child support worksheets should all be reexamined. He argued for the first time in this declaration that the restrictions on residential time and decision making should be lifted because they were imposed solely as punishment and did not protect the children. He also argued for the first time that the division of holidays was unfair. Finally, Opheikens acknowledged that the trial court had explained it did not have discretion to lift the restrictions because the restrictions were required by law.

The court heard oral argument on Opheikens' motion for reconsideration, where Opheikens reiterated his request for equal residential time and acknowledged that he "ha[d] been rearguing the same thing the whole time." VRP at 30. The court stopped Opheikens from continuing this argument and explained:

> Let's not forget I have heard this trial. I have heard many, many, many motions. I entered a parenting plan that found a history of domestic violence, abusive use of conflict. No case law would support a 50/50 residential schedule after I make those findings.
> Then I have also entered abusive -- I mean abusive litigation orders and you are back here again.

VRP at 32. The court denied Opheikens' motion for reconsideration.

Opheikens appeals the April 2023 final parenting plan and final restraining order and the court's subsequent denial of his motion for reconsideration.[3]

## ANALYSIS

### I. RESTRAINING ORDER

Opheikens challenges the final restraining order entered in April 2023. In the hearing on the minor modification, Opheikens agreed the restraining order should remain in place, seeking only to add clarification that he could have contact with Arntson when exchanging the children. For the first time, Opheikens asked the trial court to reexamine the need for a restraining order in his supplemental declaration filed after his motion for reconsideration and Arntson's answer. This was too late to preserve this issue for appeal. RAP 2.5(a). And Opheikens makes no attempt to show that his unpreserved challenge fits within any of the exceptions to RAP 2.5(a). Thus, this issue is waived and we decline to consider it.

We affirm the final restraining order entered against Opheikens.

### II. PARENTING PLAN

Opheikens argues that the trial court abused its discretion by entering the April 2023 final parenting plan and in denying his motion for reconsideration of that plan. We disagree.

A.      Appealability

As a preliminary matter, Arntson argues that we should dismiss this appeal because the challenged rulings are not appealable under RAP 2.2. Arntson is correct that temporary orders are not appealable as a matter of right under RAP 2.2(a). But here, at Arntson's request, the court

---

[3] Arntson initiated a cross appeal but later moved to voluntarily withdraw her cross appeal, and a commissioner of this court granted her motion and dismissed the cross appeal.

entered a new final parenting plan rather than issuing a temporary order. Under RAP 2.2(a)(13), final orders after judgment are appealable as a matter of right. Thus, we disagree with Arntson and proceed to review the final parenting plan on the merits.

B.      Statutory Definition of Domestic Violence

Opheikens argues that the trial court abused its discretion by adopting a final parenting plan that included limitations on his residential time and decision making based on a finding that he had a history of domestic violence as defined by former RCW 26.50.010 (2019), *repealed by* LAWS OF 2021, ch. 215, § 170, instead of the more current statute. We reject this claim of error.

We review a final parenting plan for abuse of discretion, reversing only if the court's decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). A trial court has broad discretion in developing parenting plans, but "its discretion must be exercised within the confines of applicable statutes." *In re Marriage of French*, 32 Wn. App. 2d 308, 314, 557 P.3d 1165 (2024).

Under RCW 26.09.191, when a court has found that a parent has engaged in a history of domestic violence, "[t]he parent's residential time with the child shall be limited" and "the permanent parenting plan shall not require mutual decision-making." RCW 26.09.191(1), (2)(a). The relevant definition of "domestic violence" found in RCW 7.105.010(9)(a) reads,

> Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner.

Here, Opheikens argues that the trial court abused its discretion by applying an out-of-date definition of domestic violence found in former RCW 26.50.010(3)(a), which defined "domestic violence" as:

> Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner.

Opheikens is correct that the final child support order cites former RCW 26.50.010 as the source of the definition. However, he failed to alert the trial court to this supposed error and therefore it is unpreserved under RAP 2.5(a). Moreover, he cannot establish his claimed error was manifest, as required for us to review an unpreserved error under RAP 2.5(a)(3), because the current definition of domestic violence is more inclusive, not less inclusive, than the version the trial court applied. Moreover, Opheikens does not dispute that the trial court's finding was based on his prior conviction of domestic violence assault. Thus, this claim of error fails.

C.       Findings of Domestic Violence and Residential Time Restrictions

Next, Opheikens argues that the court abused its discretion when it carried over its earlier findings of domestic violence into the challenged final parenting plan. Opheikens asserts that the trial court failed to comply with RCW 26.09.191(5) by making presumptions from a temporary parenting plan. He also argues that the court failed to make a particularized finding required under RCW 26.09.191(3)(g). We reject these arguments as well.

RCW 26.09.191(5) provides, "In entering a permanent parenting plan, the court shall not draw any presumptions from the provisions of the temporary parenting plan." But if a temporary parenting plan was entered in this case, it was not transmitted to this court for consideration in this appeal, and Opheikens has provided no citation to the record directing us to the alleged temporary parenting plan.

Although we are not obliged to comb through the record, our diligent search has not revealed any mention of a temporary parenting plan in this case, much less that the trial court made presumptions based on a temporary order. *See In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). Nor does the record indicate that Opheikens made any objection or argument on this basis below. RAP 2.5(a). Rather, the record shows that the trial court explained numerous times that it relied on its own finding of domestic violence reached *after* the parties' dissolution trial. Opheikens bore the burden of perfecting the record, and he has not provided support for his assertion that the trial court made assumptions based on a temporary parenting plan. *See State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993).

Furthermore, Opheikens argues that the trial court's restrictions violated RCW 26.09.191(3)(g), which allows discretionary restrictions based on "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child." Citing that provision, he argues that the court abused its discretion because the court failed to make a particularized finding of a specific level of harm to the children. But the court here did not impose restrictions under the discretionary portion of the statute that Opheikens cites. Instead the trial court explained numerous times and clearly stated in its final order that restrictions were being imposed under the *mandatory* provision in RCW 26.09.191(2)(a) due to Opheikens' history of domestic violence.

Finally, Opheikens argues that the trial court found he posed no threat of physical, sexual, or emotional harm to the children and therefore the court should have overridden the prior finding of domestic violence and declined to impose restrictions on his residential time under RCW 26.09.191(2)(n). But the court expressly declined to make the finding necessary to eliminate restrictions under RCW 26.09.191(2)(n).

All of Opheikens' challenges to the domestic violence finding and the residential time restrictions fail.

D.    Due Process

Finally, Opheikens argues that he was denied due process when the trial court stopped him from repeatedly arguing for equal residential time, including preventing him from presenting United States Supreme Court cases at oral argument. However, Opheikens does not present meaningful argument on this assignment of error as he was required to do under RAP 10.3(a)(6). He does not indicate what United States Supreme Court cases he wished to introduce or provide any explanation for how they would have supported his position. It is unclear from his argument whether he seeks to invoke procedural or substantive due process principles and, as Arntson points out, he has not cited any authority in this portion of his brief. We conclude that Opheikens' due process argument is insufficient to warrant consideration. *See Holder v. City of Vancouver*, 136 Wn. App. 104, 106-07, 147 P.3d 641 (2006).

In sum, we affirm the trial court's final child support order and denial of Opheikens' motion for reconsideration.

ATTORNEY FEES

Opheikens requests attorney fees under RCW 26.09.140 and under RAPs 14.2, 14.3, and 18.1. We deny his request because he has not prevailed and, in any event, he was not represented by counsel, and a self-represented party generally cannot receive an attorney fee award. *Mitchell v. Dep't of Corr.*, 164 Wn. App. 597, 608, 277 P.3d 670 (2011). Arntson requests attorney fees under RCW 26.09.140 and under RAPs 18.1 and 18.9. We grant her request under RAP 18.9 because Opheikens' appeal is frivolous.

Under RAP 18.9(a), we may order an award of attorney fees as a sanction for filing a frivolous appeal. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

We view Arntson's request for attorney fees in the context of the trial court's finding that Opheikens engaged in abusive use of litigation below. Opheikens has not disputed the trial court's finding that he engaged in abusive use of conflict, so that finding is verity for purposes of this appeal. *See Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 384, 495 P.3d 778 (2021). Nor has he challenged the court's legal conclusion that limitations were reasonable given his abusive use of conflict. Moreover, all of Opheikens' arguments on appeal were reiterations of arguments made repeatedly below; they were unsupported by the record or the plain language of the relevant statute, or they were insufficiently argued.

In sum, Opheikens failed to raise any debatable issue that might result in a reasonable possibility of reversal. Opheikens' appeal is frivolous. We grant Arntson's request for reasonable attorney fees on appeal in an amount to be determined by a commissioner of this court. *See also Blair v. Wash. State Univ.*, 108 Wn.2d 558, 571, 740 P.2d 1379 (1987) (we do not consider pro bono representation when awarding attorney fees).

CONCLUSION

We affirm. We order Opheikens to pay reasonable attorney fees in an amount to be determined by a commissioner of this court under RAP 18.9(a).

No. 58443-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, J.

CRUSER, C.J.