IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE THE MARRIAGE OF: | No. 86542-1-I |
| CHRISTINA J. COOPER, | |
|           Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DOUGLAS DE LA TORRE, | |
|           Respondent. | |

CHUNG, J. — Following months of contentious litigation and an eight-day trial, the trial court entered final orders dissolving the marriage of Christina Cooper and Douglas de la Torre and providing for the care and support of their two children. The mother appeals, challenging several of the trial court's findings and discretionary rulings. Finding no error, we affirm.

FACTS

The parties married in Washington in February 2009. They had two children, one born in 2009 and the other in 2010. They began living separately three years after they married, in 2012. For almost a decade after the separation, the parties co-parented largely without incident, celebrated holidays together, and sometimes socialized and travelled together as a family. The children spent the majority of time with the mother and generally spent two nights per week, on Tuesday and Friday, with the father. The

parents did not legally formalize their arrangement and adjusted the schedule by agreement as needed.

For reasons about which the parties disagree, their relationship changed in 2021. In December 2021, the mother filed a petition for legal separation. In response, the father sought to convert the matter to a dissolution.

In the two years between the initial petition and trial, the trial court appointed a Guardian Ad Litem (GAL), who, based on allegations of mental issues raised by both parties, recommended comprehensive forensic psychological evaluations for each parent. The parties also aggressively litigated numerous motions seeking restraining orders, temporary orders for support and a residential schedule, and contempt sanctions. The trial court held more than a dozen hearings on motions filed by the parties between January 2022 and September 2023. Based on the mother's allegations of domestic violence that mostly occurred when the parties resided together, the court entered a temporary restraining order protecting the mother and children that was amended at certain points, extended on multiple occasions, and remained in place until the December 2023 trial.

At the time of trial, the parties' children were 13 and 14 years old. In accordance with a CR 2A agreement executed eight months before trial, the residential schedule in place at that time provided for the children to reside with the father every other week for four consecutive nights, and otherwise with the mother.

Following trial, the trial court entered a Decree of Dissolution, Findings of Fact and Conclusions of Law, a Parenting Plan, a Child Support Order, and a Restraining

Order protecting the mother and both children. Although the GAL had recommended roughly equal residential time with each parent, the court entered a parenting plan that maintained the status quo for the school-year residential schedule and equalized the time with each parent during the summer and other school breaks. The court found a basis for restrictions on the father under RCW 26.09.191 due to a "pattern of domestic violence," and because the father "abused the court process" in the initial stages of the litigation. It also found that the mother engaged in abusive use of conflict. In light of these findings, the court allocated sole decision-making authority to the mother for education, non-emergency health care, and extracurricular activities. The court also imposed a condition that requires each parent to stay away from the other parent's residence and requires that they maintain a 15-foot distance at exchanges or when attending children's events.

Upon the father's post-trial motion to clarify, the trial court later amended certain provisions of the final parenting plan and child support orders. The court also denied the mother's post-trial motion for partial reconsideration.

The mother appeals.

## DISCUSSION

On appeal, the mother raises claims related to (1) the finding that she engaged in abusive use of conflict; (2) the finding of domestic violence on the part of the father and adequacy of the restrictions imposed; (3) parental restrictions imposed on her; (4) residential provisions; (5) child support provisions; (6) the payment of the GAL's fees;

(7) payment of the psychological evaluator's fees; and (8) the denial of her request for attorney fees.

In general, we review the trial court's dissolution orders for abuse of discretion. In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009). And in particular, trial courts have "broad discretion" in crafting parenting plan provisions. In re Marriage of French, 32 Wn. App. 2d 308, 314, 557 P.3d 1165 (2024). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. Id. We review findings of fact for substantial evidence. In re Marriage of Watanabe, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Id. We defer to the trier of fact for resolution of conflicting testimony, evaluation of the evidence's persuasiveness, and assessment of the witnesses' credibility.[1] In re Parentage of G.W.-F., 170 Wn. App. 631, 637, 285 P.3d 208 (2012).

I.      Abusive Use of Conflict

Under RCW 26.09.191(3)(e), a trial court has discretion to impose parental restrictions if it finds that a parent has engaged in "[t]he abusive use of conflict which

---

[1] We reject the mother's claim that we sit in "the same position as the trial judge" and owe no deference to the trial court's evaluation of the evidence because the trial court discounted the credibility of most of the testifying witnesses, including the parties. The mother provides no authority and we are aware of none that support this proposition.

creates the danger of serious damage to the child's psychological development." The trial court entered the following finding as to abusive use of conflict on the part of the mother:

> The Mother has engaged in abuse of conflict. The Mother interfered with the Father's residential time by showing up unannounced at neutral locations while having a restraining order against the Father. She interfered with the Father's residential time by communicating with him and the children during that time[,] by interfering with the Father's residential time and protracting litigation unnecessarily. These acts thus satisfy the requirements of RCW 26.09.191, meriting limitations.

In a separate provision of the parenting plan, the court found that the mother "uses conflict in a way that has caused serious damage to the psychological development of a child [identified in the plan]."

Challenging these findings, the mother first points out that simply "protracting" litigation does not satisfy the requirements of RCW 26.09.191(3)(e), which provides that conduct in litigation does not constitute an abuse of conflict unless it is "abusive." Second, referencing only her own post-trial motion for partial reconsideration, the mother claims there was no evidence that she appeared "unannounced" at any location where the father was present with the children during his residential time. Third, the mother claims that if any finding of abuse of conflict was warranted, it was warranted only as to the father, not her.

The mother cites no evidence admitted at trial to support her arguments and has not designated for review any of the more than 200 exhibits admitted at trial. In any event, the record does not reveal that she always "expressly notified" the father, despite knowing that her presence would potentially subject him to liability for violating the

restraining order and/or affect his ability to interact with the children during his residential time. The mother mentions two specific incidents, but mischaracterizes them. As to one, the father testified, and the mother did not dispute, that the mother did not specifically inform the father she would be present at a summer camp drop-off location, where her presence would affect the father's ability to accompany the children and see them depart without potentially violating the restraining order. As to the other, both testified that when the father informed the mother on the day of their daughter's concert that he changed his mind about exercising his regular residential time, the mother did not apprise him of her intent to be at school at pick-up time to intercept him.

The mother does not address other evidence in the record of interference by attending events and activities during the father's residential time without warning and interacting with the children so that he was forced to move. Nor does the mother address evidence that she interfered with the father's time by excessively communicating with the children in a manner that undermined his authority and suggested they would not be safe or comfortable in his household. There is also evidence in the record of interference with residential time by refusing to exchange the children at times, without good reason. And there is evidence of the mother's calls to the police, asserting unfounded claims that the father violated court orders in place or claiming, without cause, that police assistance was required.

The mother asserts that her acts were not egregious in comparison with abusive use of conflict that has occurred in other cases. For example, the mother cites In re Marriage of Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002), wherein the mother

engaged in abusive use of conflict by, among other things, making unfounded allegations of sexual abuse that resulted in the father's arrest and significant disruption of the parent-child relationship. Id. at 867-68. But a court's reliance on more serious misconduct to find abusive use of conflict in another case does not establish that the actions here could not support restrictions under RCW 26.09.191(3). Moreover, the conduct in Burrill was the basis for far more severe restrictions than those the court imposed here. Id. at 868.

Despite the mother's claim to the contrary, the trial court not only found that she had engaged in abusive use of conflict, but similarly found that the father "abused the court process" and his conduct was sufficient to warrant restrictions. And, while the mother now claims that because the GAL rendered an opinion on abusive use of conflict, he "usurp[ed]" the judge's authority and obligation to make legal determinations under RCW 26.09.191, the mother does not suggest or establish that she objected or otherwise preserved a claim of error. We generally decline to address unpreserved claims of error. RAP 2.5(a).

Moreover, the trial court indicated its agreement with the GAL's analysis and assessment of the children's best interests, but disagreed with the recommendations as to domestic violence restrictions and a restraining order, and with the weight assigned to the father's litigation tactics in the early stages of the case. Likewise, the trial court expressly agreed with the evaluator's findings as to the psychological condition of each parent, but "discount[ed]" other aspects of the evaluator's testimony that appeared to opine on the parties' litigation strategy. Thus, the trial court was explicit about the extent

of its agreement with and reliance on the experts' opinions, and there is nothing in the record to indicate that the court failed to reach its own independent conclusions.

The mother also claims the court was required to expressly find that her conduct created a danger of "serious damage" to the children's "psychological development" to meet the standard under RCW 26.09.191(3)(e), but failed to do so. See Burrill, 113 Wn. App. at 872 (finding of abusive use of conflict does not require evidence of actual damage, but requires a showing that a "danger of psychological damage exists"). But, as noted, the trial court did enter a written finding of harm, finding that the mother "uses conflict in a way that has caused serious damage to the psychological development to a child [identified in the plan]." Further, the court orally explained that both parents used "this dissolution proceeding to weaponize [their] relationship with the children against one another," in a manner that compromised the children's "great potential." The court's findings as a whole addressed the risk of psychological damage, thereby satisfying RCW 26.09.191(3)(e).

In sum, even excluding evidence of the mother's conduct related to the litigation, there was substantial evidence to support the finding of abusive use of conflict. The mother fails to show that the trial court erred by so finding.

II.     Domestic Violence Finding and Restrictions

The mother contends that the trial court abused its discretion by making "contradictory findings" that one of the children witnessed an incident of domestic

violence but was "not a victim" of domestic violence.[2] She further claims that the court was required but failed to make an express finding that the child was a victim of domestic violence and to order a domestic violence assessment. We disagree.

The trial court made the following finding about domestic violence:

> The Father engaged in a pattern of domestic violence. Much of these acts or threats occurred early in the relationship. Father engaged in an act of domestic violence while driving the Mother and [child] in Montana, when he pulled over . . . and threatened the Mother.

The parenting plan likewise provides that the father "has a history of domestic violence as defined in RCW 7.105.010[3]." The restraining order entered in conjunction with the final dissolution orders provides that the mother and both children are protected parties.

Again, the mother does not cite to the record or otherwise specifically identify which finding she views as inconsistent with the determination that the child witnessed a domestic violence incident.[4] Indeed, the record does not show that the court made any finding about the child's status as a victim of domestic violence. The mother claims the court was "obligated" to make an express finding on this issue and then, based on that

---

[2] According to the mother's testimony describing the 2021 incident, after she called attention to the father's inattentive driving and "skirting the center line," the father became angry, swore at the mother, and then intentionally swerved toward the center line to scare her. The father then pulled over and ordered her to "[g]et the fuck out of the car." The mother and the parties' then-twelve-year-old child remained in the back seat and the father eventually resumed driving.

[3] The Civil Protection Order Statute.

[4] In her reply brief, for the first time, the mother clarifies her view that the trial court's finding that one of the children witnessed a domestic violence incident in 2021 "legally" contradicts the finding that the father does not currently pose a threat of harm to the children. But, beyond her bare and conclusory assertion, the mother fails to explain the legal contradiction.

finding, order a domestic violence assessment. But no authority supports the premise that the court was required to identify the parties' child as a victim of domestic violence.[5] And to support her claim that the court was required to order an assessment, the mother relies on the "2015 Domestic Violence Manual," which states that "[g]iven that there is so much variance in domestic violence impact on children, any time domestic violence is identified in cases involving children, a comprehensive assessment of the specific risk posed to children by the intimate partner violence should be conducted and made available to the court."[6] The mother provides no authority, and we are unaware of any, that suggests that the manual creates a legal requirement.

Instead, as required in family law cases involving allegations implicating .191 limitations, the parties were "screened" to determine the "appropriateness of a comprehensive assessment regarding the impact of the limiting factor on the child and the parties." RCW 26.09.191(4). Here, neither the GAL's 17-month investigation nor the comprehensive psychological evaluations resulted in a recommendation that the father undergo a domestic violence assessment. The court found that "neither parent presently presents a threat of harm to the children." The parties do not reside together, a

---

[5] To the extent the mother relies on Rodriguez v. Zavala, 188 Wn.2d 586, 398 P.3d 1071 (2017), to argue that the trial court was required to identify the child as a victim of domestic violence, her reliance is misplaced. In Rodriguez, the Supreme Court recognized that children can be victimized by domestic violence by "witnessing one parent assault the other" or by "hearing and seeing [the] effects [of domestic violence] on loved ones." Id. at 596, 597. Because there was evidence in Rodriguez that the minor child was exposed to domestic violence "given the facts," which involved repeated physical assaults and threats of violence against the child's mother, the trial court erred in that case when it did not include the minor child in a protection order issued under former chapter 26.50 RCW. Id. at 598. Rodriguez is legally and factually distinguishable and does not require the trial court to make any specific factual finding in this family law matter.

[6] See Wash. State Supreme Court Gender & Justice Comm'n, Admin. Office of Courts, Domestic Violence Bench Guide for Judicial Officers 2-49 (Updated February 2016), https://www.courts.wa.gov/index.cfm?fa=home.contentDisplay&location=manuals/domViol/index.

restraining order remains in place, and there is no allegation of domestic violence outside the context of the father's relationship with the mother or when the children have been in the father's sole care in the past 12 years. In light of these facts, we cannot conclude that the court abused its discretion in declining to order a domestic violence assessment.

We also reject the mother's claim that the court violated RCW 26.09.191(1) by requiring joint decision making over major areas. While the parenting plan does not allow either parent to schedule appointments or (non-historical) extracurricular activities during the other parent's residential time absent written agreement, this does not undermine the mother's sole decision making as to education, non-emergency health care, and extracurricular activities. And contrary to the mother's argument, the restraining order requires the surrender of weapons and prohibits the father from purchasing weapons, and he filed a proof of surrender in the trial court.

III.     Mutual Parental Restriction

The mother challenges the reciprocal parenting plan provision that prohibits each parent from being within 300 feet of the other parent's residence, except as necessary for exchanges, and requires that they maintain a 15-foot distance at exchanges and events. Without citation or elaboration, the mother baldly asserts that the provision is "overly onerous" because it prevents her from visiting the father's family, who own adjacent property, and at the same time, fails to "appropriately restrict" the father.

There is ample evidence of destructive and unproductive conflict between the parties, and as explained above, the record supports the court's findings of abusive use

of conflict. The restriction appears to be "reasonably calculated" to reduce contact and therefore addresses the harm stemming from the parties' conflict. See In re Marriage of Chandola, 180 Wn.2d 632, 653, 327 P.3d 644 (2014) (parental limitations need not be narrowly tailored and need only be "reasonably calculated" to prevent the type of harm involved). The mother fails to demonstrate that the provision is outside of the trial court's broad discretion in fashioning parenting plans. See In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012) ("A trial court wields broad discretion when fashioning a permanent parenting plan.").

IV.     Residential Provisions

The mother challenges several provisions of the parenting plan. One challenged provision provides that if the parent responsible for transporting the children elects not to drive on account of "weather conditions," the other parent may collect them from that parent's residence. Although the mother claims this provision "flatly contradicts" the restraining order and other provisions, all of the restraints imposed by the trial court allow for exceptions as necessary to exchange the children. The mother also points out that the provision fails to address inclement weather in connection with out-of-state travel. However, the mother's speculation that the father will use the provision as a pretext to withhold the children in Montana, where he owns property, does not establish an abuse of discretion. There is no requirement that a parenting plan must specifically address all conceivable circumstances that may arise.

The mother claims that certain provisions for residential time during school breaks are unfair and inequitable. For instance, the mother argues that allocating 2-

week blocks of time to each parent during the summer was an abuse of discretion because the children were never away from the mother for longer than a week before the dissolution. In the same vein, the mother claims the provision that allocates the entire winter break to each parent in alternating years is detrimental and fails to support her bond with the children, as it means that the children will miss important holiday traditions with her family in some years. But historical patterns are only one consideration. Here, in accordance with the GAL's recommendations and the expressed wishes of the teenaged children, the court expressly determined that it was in the children's best interests to spend more time with the father. The residential schedule during school breaks furthers that goal. The parenting plan also reduces the number of transitions between households as a means to minimize the contentious interactions between the parents.[7] The court did not abuse its discretion by including the challenged provisions in the parenting plan.

V.     Child Support Order

The mother challenges two aspects of the amended child support order. First, the mother claims the trial court erred in calculating her income by including all income earned from her real estate sales business, not the lesser amount she draws from her gross income.

For purposes of determining child support, the trial court must consider all income and resources of each parent's household. RCW 26.19.071(1). "[M]onthly gross

---

[7] Also, while the mother claims that the transition between the summer and school-year schedules is unclear, the parenting plan explicitly sets forth the date each year when the summer schedule ends and the school-year residential schedule begins.

income shall include income from any source," including salaries, wages, deferred compensation, dividends, interest, bonuses, and income from a business. RCW 26.19.071(3). The evidence showed that, in addition to the salary earned from her position with the Issaquah School District and rental income, the mother earned $40,369 in income from her real estate business between January and October 2023, and she testified that she had earned an additional commission of approximately $8,000, but had not yet received payment. However, the mother claimed business income for 2023 of only $1,000 per month, because that was the amount she drew monthly from her business account.

Washington applies the rule that "a business's retained earnings should be considered income to the business's sole owner, absent a legitimate business need to retain the earnings." In re Marriage of Stenshoel, 72 Wn. App. 800, 806, 866 P.2d 635 (1993). The burden is on the business owner to demonstrate that retained earnings are solely maintained for the business. Id. at 806-07. Although the mother points out that her "real estate business has expenses that must be met," she cites no evidence in the record to show that she met her burden to prove that all retained earnings were necessary for the business. The mother fails to demonstrate that the trial court erred in calculating her income using the business's gross income.

Second, the mother challenges a provision of the amended child support order that indicates that the parties' proportional shares of the children's health insurance premiums are included in the child support payments and no separate payments are required. The mother claims the court "inexplicably" altered the previous version of this

14

provision, which provided for separate payment of the parents' respective shares of insurance premiums. But the mother fails to mention that in her response to the father's motion to clarify, recognizing that the child support worksheets included the health care premiums in the calculation of each party's presumptive payment, she conceded that the father's motion should be granted and the provision should be amended. The mother's claim of error as to this provision is entirely without merit.

VI.     GAL Fees

The mother argues that the trial court erred in ordering her to pay half of the outstanding GAL fees. We disagree.

RCW 26.09.220 authorizes a trial court to appoint a GAL. The mother advocated for the appointment. Nevertheless, the mother objects to the order that requires her to bear half of the fees, asserting that (1) the trial court determined that the GAL's investigation was inadequate; (2) the GAL's fees exceeded the initial $6,000 cap; (3) the GAL prolonged the litigation; (3) the fees included charges for the GAL's participation in mediation during which the GAL remained exclusively in the father's Zoom room; (4) the fees included charges for 10 days of trial although trial lasted only 8 days and the mother requested that the GAL not attend trial to reduce costs; (5) the GAL changed his testimony after ex parte contact with the father's counsel; (6) the trial court failed to exercise oversight over the GAL's work; and (7) the GAL was biased against the mother.

The issue of the GAL's fees was thoroughly litigated below.  The GAL was appointed on June 21, 2022, submitted his last supplemental material in January 2024,

and investigated the case for over 17 months. The court did not determine that the GAL's investigation was inadequate. As explained above, the court "largely agree[d] with [the GAL's] recommendations and his analysis of this particular case" and specifically agreed with the GAL as to the "best interests of the children"—the primary issue the GAL was charged with investigating. The court disagreed with the GAL as to the weight and implications of the largely historical allegations of domestic violence and about whether a continuing restraining order was appropriate. This difference of opinion simply reflects that the trial court made independent determinations; it does not imply that the investigation was insufficient.

The GAL responded below to the mother's objection to specific fees charged. The GAL explained, for instance, that he was required by court order to attend all court hearings, including trial, and that he blocked out two weeks of his schedule based on the parties' estimated trial length and was not provided with updated information. The GAL explained that charges were incurred for mediation because, again, he reserved the time with the understanding that he would be participating in mediation, only to be informed to the contrary after mediation began and the GAL had been admitted into the father's Zoom room.

The GAL submitted a final invoice more than a month before trial. At the outset of his testimony, he sought court review and approval of the fees beyond the limits set in the initial order, as required. The court determined that the fees were "reasonable" and considered "all relevant factors, including each party's ability to pay," in determining that the parties should each pay 50 percent. There was appropriate review and oversight.

16

Although it is evident that the GAL's views did not align with the mother's positions, the record does not reflect that the GAL changed his testimony, was responsible for protracting the litigation, or exhibited bias against the mother. The mother fails to demonstrate that the court abused its discretion either by approving the GAL's fees or by ordering the parties to each pay half.

## VII. Evaluator Fees

The mother also challenges the order requiring her to pay half of the fees of the psychologist who conducted the forensic psychological evaluation of each party. The mother claims that the fees incurred for the psychologist's trial testimony were unnecessary because there was no objection to the admission of his reports. While that may be so, the fact that *the mother* initially identified the psychologist as a potential witness undermines her argument. Moreover, the mother does not assert, nor does it appear, that she objected below to the psychologist's providing testimony in addition to written reports. Again, we generally do not review unpreserved claims raised for the first time on appeal. RAP 2.5(a).

## VIII. Attorney Fees

Finally, the mother claims the trial court articulated no reasoning and abused its discretion in denying her request for attorney fees. See Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014) (this court reviews a trial court's denial of attorney fees for an abuse of discretion). Acknowledging that the parties' 2009 prenuptial agreement required each party to pay their own fees, the mother claims the trial court should have

disregarded the agreement because the proceeding was "far from an ordinary divorce case."[8]

The trial court did, in fact, explain that it denied fees based on both the parties' CR 2A agreement, wherein they agreed to pay their own fees incurred up to the April 6, 2023 date of the agreement, and the prenuptial agreement, which provided that "each party shall pay their own fees and costs in the event of a legal separation or dissolution." The court further noted that each party indicated at the outset of the case that the prenuptial agreement should be enforced. And the court expressly found that the litigation was "prolonged because of both parties unnecessarily" and there was "no basis to award fees to either party." Here too, the court's decision was well within its discretion, and the mother fails to establish reversible error on this issue.

Affirmed.

_____
Chung, J.

WE CONCUR:

_____    _____
Birk, J.    Mann, J.

---

[8] It does not appear that the record designated for review includes the parties' prenuptial agreement, but the parties do not dispute the existence or content of the fee provision.

18